Jacobus v. The St. Paul and Chicago Railway Company.

---

## D. Jacobus

*vs.*

## The St. Paul & Chicago Railway Co.

Plaintiff received a personal injury through the alleged gross negligence of defendant's servants in charge of a railway train upon which plaintiff was traveling. Plaintiff was riding upon a free pass which with the conditions endorsed is in these words, viz.: " St. Paul & Chicago Railway. Pass D. Jacobus upon the conditions endorsed hereon until December 31st, 1871, unless otherwise ordered. Not Transferable.

D. C. Shepard,
Chf. Eng. and Supt."

" Conditions.
" The person who accepts and uses this free ticket thereby assumes all

Jacobus v. The St. Paul and Chicago Railway Company.

risk of accident, and agrees that the company shall not be liable under any circumstances, whether by negligence of its agents or otherwise, for any injury of the person, or for any loss or injury to his property, while using or having the benefit of it." *Held*, that the pass and conditions do not protect the defendant from liability for injury received by plaintiff (while riding upon such pass,) through the gross negligence of defendant's employees. *Held* further, that the same degree of care was required of defendant as if plaintiff had been a passenger carried for hire.

Consideration of the evidence going to show defendant's negligence in this case.

*Held*, that the distinction between different degrees of negligence is inapplicable to cases of this kind.

*Held*, that the plaintiff was not, by going into and remaining in the baggage car (where he was at the time of his injury,) guilty of contributory negligence so as to exonerate the defendant from liability.

The plaintiff brought this action to recover damages for personal injury sustained while traveling as a passenger upon defendant's railroad, occasioned, as is alleged, by the negligence of the defendant. The defenses were, that the plaintiff was traveling upon a free pass or ticket, issued to him without consideration, by accepting which he assumed all risks of accident; that contrary to the regulations of the defendant, well known to plaintiff, he was riding in a baggage car, when the accident occurred; that plaintiff's own negligence contributed to the injury, without any negligence of defendant.

The cause was tried in the court of common pleas for Ramsey county, resulting in a verdict for the plaintiff. Defendant moved to set aside the verdict, and for a new trial, upon the grounds: " 1st. That the verdict is not justified by the evidence, and is contrary to law. 2d. Errors of law occurring at the trial, excepted too by the defendant." The motion was denied, and defendant appeals to this court. The same points are made in this court, and are so fully discussed in the opinion, that no further statement is necessary.

Jacobus v. The St. Paul and Chicago Railway Company.

BIGELOW, FLANDRAU & CLARK, for Appellant, cited to the point that "The pass with its conditions, upon which the plaintiff was riding, was a perfect protection to the defendant, even if the defendant had been guilty of gross negligence," *Kinney v. R. R.*, 34 *N. J.* 513 ; 3 *Am. R.* 265 ; *Bissell v. R. R.*, 25 *N. Y.* 442 : that plaintiff by his own negligence, in riding in the baggage car, contributed to the accident and injury sustained, and for that reason cannot recover, *Hazzard v. R. R.*, 26 *Ill., Opinion,* 383–4 ; *Chamberlain v. R. R.*, 11 *Wis.* 238, *Opinion,* 247 ; 2 *Red. on Railways,* 185, *note :* that "the question whether a passenger is guilty of negligence which contributes to the injury is one of law and not of fact," 3 *Allen,* 18 ; 6 *Gray,* 64 ; 16 *Gray,* 501 ; 1 *Allen,* 187.

I. V. D. HEARD, for Respondent, cited to the point that "a railroad company cannot by contract, in case of a free pass, exempt itself from gross negligence," *Ill. Cent. R.R. Co. v. Read,* 37 *Ill.* 484 ; *Redfield on Carriers,* 268 ; *Ind. Cent. Railway Co. v Munday,* 21 *Indiana,* 48 ; 23 *Penn.* 526 ; 2 *Redfield's Am. Railway Cases,* 466 ; 31 *Maine,* 228 ; *Ill. R. R. Co. v. Morrison et al.,* 19 *Ill.* 136 : that "riding in a baggage car will not excuse negligence of railroad company, much less gross negligence," 10 *Am. Law Register,* 615 ; 6 *Ib.* 93 ; 1 *Duer.* 571 ; 2 *Red. on Laws of Railways,* 195 ; *O'Donnel v. Alleghany Val. R. R. Co.,* 59 *Penn.* 239 ; 8 *Am. Law Register,* 757.

*By the Court.*—BERRY, J.—The plaintiff brings this action to recover damages for injuries occasioned to his person by the alleged gross negligence of defendant's servants in charge of defendant's railway train, upon which plaintiff was traveling. Plaintiff was riding upon a free pass, which, together with the conditions endorsed, is in these words, viz.:

"ST. PAUL & CHICAGO RAILWAY.

"Pass D. Jacobus upon the conditions endorsed hereon, until Dec. 31st, 1871, unless otherwise ordered. Not transferable.                     D. C. SHEPARD,

Chf. Eng. and Supt."

"CONDITIONS.

"The person who accepts and uses this free ticket thereby assumes all risk of accident, and agrees that the company shall not be liable under any circumstances, whether of negligence of its agents or otherwise, for any injury of the person, or for any loss or injury to his property, while using or having the benefit of it."

Upon the pleadings and the charge of the court, the first question arising in this case is, whether the pass with its conditions, protects defendant from liability for injury received by plaintiff while riding upon such pass, even though the injury was caused by gross negligence upon defendant's part. In our opinion, this question should be answered in the negative. For the reason that the degree of care and diligence exacted of a bailee should be proportioned to the importance of the business and of the interests at stake, (*Halley vs. Boston Gas Light Co.*, 8 *Gray*, 131; 57 *Me.* 202,) "the law imposes upon the common carrier of passengers the greatest care and foresight for the safety of his passengers, and holds him liable for the slightest neglect." *McLean vs. Burbank*, 11 *Minn.* 288. And for like reasons the same extreme care is required, though the passenger be carried gratuitously. Having undertaken to carry, the duty arises to carry safely. *Phil. & Reading R. R. Co. vs. Derby*, 14 *Howard* (*U. S.*) 486; *Nolton vs. Western Railway*, 15 *N. Y.* 444; *Steamboat New World vs. King*, 16 *How.* (*U. S.*) 474; 2 *Redfield on Railways*, 184-5, *and notes; Perkins vs. N. Y. Central R. W. Co.* 200; *Todd vs. Old Col. & F. R. R. Co.*, 3 *Allen*, 21.

Jacobus v. The St. Paul and Chicago Railway Company.

In the case at bar, however, the plaintiff was not merely a gratuitous passenger, *i.e.* a passenger carried without payment of fare or other consideration. He was a passenger upon a free pass expressly conditioned that the defendant should not be liable to him for any injury of his person while he was using or having the benefit of such pass. Does this circumstance distinguish his case from that of a merely gratuitous passenger? Upon the question whether conditions of this kind are valid and effectual to exonerate the carrier of passengers, the adjudications differ. In New York, the conditions appear to be held sufficient to absolve the carrier from liability, even for the gross negligence of his employees. *Wells vs. N. Y. Central Railway*, 24 *N. Y.* 181; *Perkins vs. same, Ib.* 196; *Bissell vs. same*, 25 *N. Y.* 442. In New Jersey, it is held that such conditions are good as against ordinary negligence, with a very decided intimation that the exemption from liability comprehends gross negligence also. *Kinney vs. Cen. R. R. Co.*, 34 *N. J.* 513.

In Pennsylvania, Illinois, Indiana, and several other states, the courts hold that no such condition will avail to protect the carrier from responsibility for the gross negligence of its employees. *Ill. Central Co. vs. Read*, 37 *Ill.* 484; 19 *I'd*, 136; *The Ind. Cen. R. Co. vs. Munday*, 21 *Ind.* 48; *Penn. R. Co. vs. McCloskey's Adm'r*, 23 *Pa.* 532; *Mobile & Ohio Railway vs. Hopkins*, 41 *Ala.* 489.

There are two distinct considerations upon which the stringent rule as to the duty and liability of carriers of passengers rests. One is a regard for the safety of the passenger on his own account, and the other is a regard for his safety as a citizen of the state. The latter is a consideration of public policy growing out of the interest which the state or government as *parens patriae* has in protecting the lives and limbs of its subjects. *Shearman & Redfield on Negligence*, § 24;

*C. P. & A. R. Co. vs. Curran*, 19 *Ohio State*, 12; *Phil. and Reading R. R. Co. vs. Derby, supra; Steamboat New World vs. King, supra; Smith vs. N. Y. Central R. Co.*, 24 *N. Y.* 222; *Ill. C. R. Co. vs. Read, supra; Penn. R. Co. vs. Henderson*, 51 *Penn.* 315; *Bissell vs. N. Y. C. R. Co.*, 25 *N. Y.* 455, *per Denio, J.; N.Y. Central R. Co. vs. Lockwood*, (*U. S. Supreme Ct.*) not yet reported.

So far as the consideration of public policy is concerned, it cannot be over-ridden by any stipulation of the parties to the contract of passenger carriage, since it is *paramount* from its very nature. No stipulation of the parties in disregard of it, or involving its sacrifice in any degree, can, then, be permitted to stand. Whether the case be one of a passenger for hire,— a merely gratuitous passenger,—or of a passenger upon a conditioned free pass, as in this instance, the interest of the state in the safety of the citizen is obviously the same. The more stringent the rule as to the duty and liability of the carrier, and the more rigidly it is enforced, the greater will be the care exercised, and the more approximately perfect the safety of the passenger. Any relaxation of the rule as to duty or liability naturally, and it may be said inevitably, tends to bring about a corresponding relaxation of care and diligence upon the part of the carrier. We can conceive of no reason why these propositions are not equally applicable to passengers of either of the kinds above mentioned.

It is said, however, that it is unreasonable " to suppose that the managers of a railroad train will lessen their vigilance and care for the safety of the train and its passengers because there may be a few on board for whom they are not responsible." In the first place, if this consideration were allowed to prevail, it would prove too much; for it could be urged with equal force and propriety in the case of a merely gratuitous passenger, as in a case like this at bar. Yet, as we have seen,

Jacobus v. The St. Paul and Chicago Railway Company.

no such consideration is permitted to relieve the carrier from the same degree of liability for a gratuitous passenger, as for a passenger for hire.

Again, suppose (what is not at all impossible or improbable, as for instance in case of a free excursion,) that most or all of the passengers upon a train were gratuitous, or riding upon conditioned free passes, the consideration urged would be no answer to a claim that the carrier should be responsible. A general rule can hardly be based upon such calculations of chances. Moreover, while it might not ordinarily occur that the presence of a free passenger upon a train, for injury to whom the carrier would not be liable, would tend to lessen the carrier's sense of responsibility and his vigilance, it still remains true that the greater the sense of responsibility, the greater the care ; and that *any* relaxation of responsibility is dangerous.

Besides these considerations, it is to be remembered that the care and vigilance which a carrier exercises do not depend alone upon a mere sense of responsibility, or upon the existence of an abstract rule imposing stringent obligations upon him. It is the enforcement of the rule, and of the liability imposed thereby—the mulcting of the carrier for his negligence—which brings home to him in the most practical, forcible and effectual way, the necessity for strictly fulfilling his obligations.

It may be that on a given occasion the gratuitous passenger, or the passenger upon a free pass, is the only person injured, (as, for aught that appears, was the fact in this instance,) or the only party who will proceed against the carrier, the only person who will practically enforce upon the carrier the importance of a faithful discharge of his duty. These considerations, as it seems to us, ought to be decisive upon the point that sound public policy requires that the rule as to

the liability of the carrier for the safety of the passenger should not be relaxed though the passenger be gratuitous, or, as in this case, riding upon a conditioned free pass. It is contended that there was no proof of gross negligence on defendant's part, and that, therefore, the verdict was not justified. There was evidence that the train was a mixed train; that it was running from forty to forty-five miles an hour according to the plaintiff, and according to the other witnesses from fifteen to twenty-two miles an hour; that the lumber was upon a platform car, and that the stake of the lumber car, in consequence of the breaking of which the injury occurred, was a stick of butternut cord wood, and was cross-grained. There was also the testimony of J. T. Maxfield, of St. Paul, a passenger who appears to be an intelligent and entirely disinterested witness, and who says " I felt anxious about the lumber car. I was afraid of the speed.     *     *     *     I was apprehensive of danger from the character of our train. I spoke to the brakeman about it.     *     *     Have traveled on trains a good deal." And taking all these facts together—to say nothing about others appearing in the case—it cannot be said that there was not evidence in the case proper to be considered by the jury, and having some reasonable tendency to establish negligence, which has been well described as being a negative word signifying the absence of such care as it is the duty of the negligent party to exercise in the particular case. *Grill vs. General, &c., Collier Co., Law Rep.*, 1 *C. P.* 612; *Steamboat New World vs. King, supra.* We will go further even, and say that the evidence, in our opinion, had a reasonable tendency to establish *gross* negligence in the sense of a great degree of negligence. *Angell on Carriers*, § 22. As to the point of the degree of negligence necessary to sustain this action, it is, however, to be remarked, in view of the stringent rule as to liability, that

Jacobus v. The St. Paul and Chicago Railway Company.

where the question is between a railway carrier of passengers and a passenger, there would seem to be no occasion for the ordinary distinction of different degrees of negligence, as slight, ordinary and gross. As is well and forcibly said by Mr. Justice Grier in *Philad. & Reading R. Co.*, *supra:* " When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence in such cases may well deserve the epithet of 'gross.' " So in *Steamboat New World vs. King.* Mr. Justice Curtis, referring to the doctrine thus announced, says : " We desire to be understood to re-affirm that doctrine as resting not only on public policy, but on sound principles of law." A similar view of the impracticability of a distinction between different kinds of negligence as applicable to cases of this kind is taken in *Perkins vs. N. Y. Central R. Co.*, *supra.* The carrier being bound to exercise the greatest care, and being liable for the slightest neglect, what is said by Rolfe, B. in *Wilson vs. Brett*, 11 *Mees & Welsby*, 113, and endorsed by Willis, J. in *Grill vs. General, &c., Collier Co., Law Rep.*, 1 *C. P.* 612, is in point in a case of this kind, viz.: that he " could see no difference between *negligence* and *gross* negligence ; that it was the same thing with the addition of a vituperative epithet." See also *Angell on Carriers*, § 23, and *Briggs vs. Taylor*, 28 *Vt.* 180.

It is further argued on behalf of the defendant, that the plaintiff by his own negligence, contributed to the injury sustained, and for that reason he cannot recover. This argument is founded upon the fact that plaintiff was in the baggage car at the time of the accident, and as defendant contends,

wrongfully there. But, in the first place, the evidence is conflicting as to whether or not the plaintiff was informed of the rule of the company excluding passengers from the baggage car. If he was not so informed, and was suffered to remain there without objection, it could hardly be said that his presence there was negligence. *Dunn vs. Grand Trunk Railway*, 58 *Maine*, 187. Again, if it be admitted that the plaintiff was duly informed of the regulation of the company excluding passengers from the baggage car, the evidence shows that he was, at least, *permitted* to remain there by the conductor. If he was thus permitted to remain, so that he was there with the knowledge of the conductor, and without any attempt on the part of the conductor to enforce the company's rule by removing him, his presence there would not be such negligence as would exonerate the defendant from the consequences of its negligence or want of care. On the contrary, his presence there, under such circumstances, would render it the duty of the company, in view of the fact that he was there, to exercise the highest care required for his safety, and to refrain from the slightest neglect tending to his injury. *Dunn vs. Grand Trunk Railway, supra ; Isbel vs. N. Y. and New Haven Railway Co.*, 27 *Conn.* 303 ; 2 *Redfield Railway Cases*, 474–502.

Still, again, admitting that the plaintiff was cognizant of the rule of the company excluding passengers from the baggage car, and that he persisted in remaining there without the permission or consent, yet with the knowledge of the conductor, and was guilty of negligence in so doing, this negligence would not prevent his recovering unless it were contributory to the injury received. To be thus contributory, in a legal sense, it must be a *proximate* cause of the injury,— that is, it must have been near in the order of causation, (*Shearman and Redfield on Negligence*, 37–38,) and it must have contributed, to some extent, directly to the injury, and

must have been not a mere technical or formal wrong contributing either incidentally or remotely or not at all to the injury. *Isbel vs. N. Y. and N. H. R. R. Co., supra ; 2 Redfield R. Cases,* 485–490. Now, notwithstanding the fault or negligence of the plaintiff in remaining in the baggage car, and admitting that the baggage car was a place of greater danger than the passenger car, and that the plaintiff would not have been injured if he had not been there, his presence there with the knowledge of the conductor, made it defendant's duty to exercise care to avoid injuring him while there ; and if injury resulted from want of such care, the defendant is liable. *Isbel vs. N. Y. and N. H. R. Co., supra.* If the injury resulted from want of such care, *i. e.,* negligence on defendant's part—such negligence, and not plaintiff's fault in being in the baggage car, would be the immediate and direct—*the more proximate*—cause of the injury, and defendant would be responsible for the same. *Isbel vs. N. Y. and N. H. R. Co., supra ; C. C. and C. R. Co. vs. Elliot,* 4 *Ohio State,* 476 ; *Shearman and Redfield on Negligence,* § 25 ; *Keith vs. Pinkham,* 43 *Me.* 503 ; *Huelsenkamp vs. Citizens Railway Co.,* 37 *Mo.* 537 ; *Richmond vs. Sac. R. R. Co.,* 18 *Cal.* 351 ; *Lackawanna and Bloomsburg R. Co. vs. Chenewith,* 52 *Penna.* 386.

In our opinion there was evidence in the case for the consideration of the jury in reference to these views of the law, and from which they might reasonably find that plaintiff's negligence in this case was not contributory to the injury received by him.

These considerations dispose of the case, the result being that the order denying a new trial is affirmed.