### No. 9528.

D. A. HANSON, TUTOR, VS. MANSFIELD RAILWAY AND TRANSPORTATION COMPANY.

Railroad companies are held to the greatest care and diligence both in regard to the machinery and equipments of the road and the conduct and acts of their officers, agents and employees.

One who goes on a freight train by permission of the conductor, or the engineer acting as conductor, and pays the usual fare, is entitled to the privileges and protection of a passenger, even though the officer has been forbidden to receive passengers on such trains; provided, such order was not known to the passenger.

| | |
|---|---|
| 38 | 111 |
| 47 | 1675 |
| 38 | 111 |
| 48 | 981 |
| 49 | 1197 |
| 38 | 111 |
| 105 | 455 |

The going on a freight train and even taking a seat in the cab of the locomotive by the direction of the engineer in sole charge, is not contributory negligence *per se* on the part of the passenger, who has paid his fare, especially where persons are habitually or occasionally received on such trains and placed in the same or like places thereon.

Where the conduct of a passenger has contributed to the casualty, but such conduct has not been, *in a legal sense*, imprudent or negligent, he may recover if the defendant were in fault.

APPEAL from the Tenth District Court, Parish of DeSoto. Taylor, J.

*J. M. Cunningham* and *J. S. Young* for Plaintiff and Appellant.

*C. W. Pegues* and *J. C. Pugh* for Defendant and Appellee.

The opinion of the Court was delivered by

Todd, J. This case was argued and submitted at the recent term of this court at Shreveport, and it was agreed that it should be decided at this place.

The plaintiff, as the tutor of his minor son, Charles Hanson, sues the defendant company for damages on account of personal injuries caused the latter by the explosion of the boiler of a locomotive, used on the company's road, and charged to have resulted from serious defects in the boiler, and the gross negligence of the engineer in charge of it.

The answer is, substantially, a general denial, coupled with an allegation of contributory negligence on the part of plaintiff's ward which, it was averred, relieved the company of any liability for the alleged injury.

There was judgment for the defendant and the plaintiff has appealed.

The facts are substantially these:

The defendant's railway, known as the Mansfield Transportation Road, extends from the town of Mansfield to its junction with the Texas and Pacific Railroad, a distance of nearly two miles.

At the time the casualty is alleged to have occurred, the company ran two passenger trains and two freight trains over the road daily.

On the 18th of January, 1883, Charles Hanson, a youth of about seventeen years of age, went to the depot of the company in the town of Mansfield, for the purpose of procuring a passage for himself to the aforesaid junction. There was a freight train at the depot, consisting of two cars which were loaded and locked. It was some hours before the passenger train would leave. Not wishing to wait, he spoke to the engineer and asked if he could go down with him to the junction. Permission was granted, and the engineer assigned him, together with a,

lady passenger, seats in the cab of the locomotive. This cab is described as a space three feet by four, where wood was stored for the running of the engine and for the accommodation of the engineer and fireman.

There was an order of the company against taking passengers on the freight train, but no notice of this order was posted at the depot or elsewhere, and young Hanson was not shown to have been cognizant of it. On taking the seat assigned him, the usual fare was demanded and paid to the engineer. There was no conductor on the train, the engineer being in sole charge. It was stated on the trial by one of the directors, quoting his language, "when there is no conductor on a freight train the engineer controls it in the running of it."

It appears that occasionally passengers were received on the freight trains, as in this instance, and sometimes paid their fare and sometimes did not.

After Hanson had been seated in the cab a short time, having had, it seems, some experience with steam engines, he noticed or discerned that the water was low in the boiler, he called the engineer's attention to the fact and told him that there was someting wrong, and rose to get off the train, when the engineer laid his hand on his arm and told him there was no danger and that he knew what he was doing, and at that instant, as we construe the testimony, the explosion took place. By it the engineer and the lady passenger and the breakman and fireman on the car in the rear were killed, and Hanson seriously injured. He was senseless for several hours, had several gashes on his head, was badly scalded about the face and neck, and his collar bone broken. He suffered great pain from his wounds, was confined to his bed for nearly a month, and could neither speak nor see for several days. Though able to resume his work—being a telegraph operator—his sight remained somewhat impaired; there is a deformity in one of his shoulders, it being lowered from its normal position, and his sleep is disturbed by fits of nervousness and fright—alleged consequences of the shock he received.

1. The first question to be considered is whether the explosion was caused by negligence on the part of the company or any of its officers or agents.

We deem it unnecessary to enter into a detail of the evidence on this point. We have attentively examined the whole of it, and it conclusively shows that the direct and proximate cause of the casualty were

8

the serious defects in the boiler and the want of skill or gross carelessness of the engineer.

This is the more appreciable in this case, when we consider that, under the well settled jurisprudence of the country railroad companies are held to the greatest care and diligence, both in regard to the machinery and equipments of the road, and the conduct and acts of their officers, agents and employees. 10 Ann. 38; 14 Howard, 486, Am. and Eng. R. R. cases, vol. 6, p. 592.

It is indisputable that the defendant company, in this instance, fell far short of these essential legal requirements.

2.. The next inquiry is whether the plaintiff's son was a passenger and entitled to the privileges and protection extended to passengers on railroad trains, under the state of facts above set forth.

This is a question that admits of much discussion, and one in which the authorities are not entirely harmonious. We have diligently examined these authorities and have reached the conclusion that they greatly preponderate in support of the proposition, that in this instance the plaintiff's son stood in the relation of a passenger to the company.

He was either a passenger or a trespasser on the train. He could not reasonably be held to be the latter, in view of the fact that he boarded the train by the permission of the engineer then acting conductor and having sole charge of the train; that he was assigned a seat by him; that he paid him the usual fare—and, moreover, that his case was not an isolated one, but that he, the engineer, occasionally, if not habitually, received other persons on the freight train and assigned them at times the place to which Hanson was directed; and that, at that very time, he received a lady on board the train who, by his direction, occupied the same cab or seat with Hanson.

But it is urged that there was an order of the company, that persons should not be permitted to ride on the freight trains, and the engineer was forbidden to receive them. In the absence of the proper notice of such order, by being posted at the depot or otherwise, brought to the attention of the public, it remained a regulation solely between the company and its employees, and could have no effect upon the right of passengers, or the responsibility of the company..

Rorer, who is justly held as high authority on this subject, in his work on Railroads, p. 1113, thus discourses on this point:

"Where freight trains, *or some of them*, are accustomed to carry passengers for pay, and a passenger enters a freight train to be carried for pay, though he may have no ticket and though the course of such

trains as to carrying passengers may, as between the employees thereon and the company, be such that passengers are not allowed thereon, yet such person if ignorant thereof is entitled to be regarded as a passenger, and if injured the company is liable."

The author cites among other cases in support of this doctrine that of Lucas vs. Milwaukee Railroad, 33 Wis. In that case a person went to the depot and found the ticket office closed and a freight train about starting. He went aboard this train by consent of the conductor, who had been forbidden to take passengers on such trains, and it was held that he was a passenger; and in so holding and in discussing this question of persons boarding freight trains, where the company was not in the habit of carrying passengers on such trains, the Court used this language : "Especially will this be so if they are directed to go aboard by the conductor, although such conductor has in fact no such authority from the company for that purpose."

A leading case on this point is that of Dunn vs. Grand Trunk Railway, 58 Me. 187, from which we quote as follows :

"If a passenger enters the caboose car of a freight train and when the train starts, without being requested to leave, remains there as passenger, contrary to rules of the company, but with the knowledge of the conductor, who receives from him the usual fare of a first class passenger, the corporation incurs the same liability for his safety as if he were in their regular passenger car."

And again : "Every one riding in a railroad car is *prima facie* presumed to be there lawfully as a passenger having paid his fare, and the *onus* is upon the carrier to prove affirmatively that he was a trespasser * * * * * That the regulations of the defendant are binding on its servants. Passengers are not presumed to know them."

To the same effect are 3 Otto, 93 U. S. 1291; 14 How. 486; 1 Duer 578; 20 Minn. 125, 126; 43 Ill. 364; Am. and Eng. R. R. Cases, vol. 1, p. 257.

The learned judge of the district court in his reasons for judgment cites approvingly the case of Easton vs. Delaware R. Co. as opposed to the above authorities.

In that case the conductor of a coal train invited some boys to ride upon the train to a certain point, promising them employment. There was a printed regulation forbidding persons from riding on the train. It did not appear that passengers were ever allowed to ride thereon, and no fare in that instance was paid or demanded. In such features it differs from the instant case. Thompson in his work on Carriers, p. 344, thus comments on that case :

"The foregoing decision (Eaton vs. Del. R. Co.) is strictly in accord with the circumscribed views of the courts of the State of New York, in regard to the scope of a servant's authority and the immunity of the master from liability for the results of acts for the doing of which the servant was not hired. But as courts in general are not disposed to thus limit the responsibility of the master for the acts of his servant, it will not be surprising to find that a contrary opinion is entertained upon this question. Thus the Supreme Judicial Court of Maine, in Dunn vs. Grand Trunk R. Co. have held," and quotes from the decision, and adds, "to the same effect is the decision of the Supreme Court of Pennsylvania, in the late case of Creed vs. Penn. R. Co. *These last two cases would seem to express the better view of this question, and they have the support of authority* in analogous cases."

Under these circumstances we cannot accord the same weight to that decision that was given it in the court below.

3. This being as to the question of contributory negligence.

This is charged to have consisted in Hanson boarding the freight train and taking a seat in the cab of the locomotive; and again, his failing to leave the train on discovering the condition of the boiler or the low state of the water therein.

Much that we have said upon the question of his being a passenger will apply to the first branch of this inquiry, as to whether his acts in the premises, as stated, constituted negligence *per se*.

This Court in the case of Knight vs. Pontchartrain R. Co., 23 Ann. 462 has laid down rules of contributory negligence, which we find have been quoted and approved as sound by Rorer in his work mentioned, page 1039.

These are substantially:

1. "Where the conduct of plaintiff has, as a matter of fact, contributed to the accident, but such conduct has not been in a legal sense imprudent or negligent. In such case plaintiff may recover from a defendant in fault.

2. "Where the conduct of plaintiff has been negligent or imprudent, but has not contributed to the accident. In such case the plaintiff may recover from defendant in fault.

3. "Where the conduct of plaintiff has been negligent and has contributed to the disaster. In such case the plaintiff cannot recover, even though the defendant be in fault."

It is not easy to perceive how, by any reasonable application of any one of these rules to the facts of this case or of the facts to the rule, the plaintiff could be considered as debarred from the right of recovery.

It is certain that the defendant was in fault with regard to this explosion which caused the injury, and that the fault of the company in providing a defective engine, and the fault of the engineer in not keeping a sufficient supply of water in the boiler, were the immediate and direct causes of the disaster.

It cannot be said that the plaintiff, by any act or omission, contributed to produce the explosion of the boiler, or that he, in any manner, contributed to the injury he sustained, unless indirectly and remotely by being on the train and in the place he occupied thereon. And if his presence there could be held as any kind of contributory negligence, he could not, under any rule or principle of law, be held guilty of negligence in *a legal sense*.

Negligence, in its common acceptation, is held to be the doing of something that a reasonable and prudent person would ordinarily not have done under the circumstances of the situation, or the omission to do something which a person of like character would have done under the circumstances of the case.

We incline to the belief that most any man of average prudence, situated as Hanson was at the time, would have acted just as he did in this instance. The road was a short one—less than two miles—he went on the train by permission of the person in charge of it, and took the place assigned him thereon—as an employee of a telegraph company he had often occupied a similar place on a train without harm.

Leaving out for the moment the question of an explosion, the only increased danger that would naturally suggest itself to his mind incident to his position on the engine, and that he would not be equally exposed to on a passenger train, was such as might result from a collision with another train or that of being shaken or jolted off from the rapid running of the train or meeting an obstruction on the track.

As to the danger from an explosion, he was just as safe where he was as he could be elsewhere on any kind of a train; provided the engine was sound and the engineer did his whole duty, and he had a right to expect a sound engine and a competent and careful engineer; and it argued no negligence on his part that he rested in security on this presumption.

And in this connection we may add that, as before stated, the proximate causes of this disaster were an unsound engine and the negligence of the engineer, and there is a high authority to support the proposition that, to defeat a recovery on account of contributory negligence, such negligence must be the proximate cause of the in-

jury. Am. and Eng. R. R. cases, vol. 8, p. 480, citing Fowler vs. Balt. and O. R. R; W. Va. R. R. and 9 W. Va. 253; 16 W. Va. 307.

It has also been frequently held, that taking an unusual place on a train, which ordinarily might be considered contributory negligence, cannot be so regarded where the place is occupied by the direction or a permission of the conductor.

Thus where he goes on the car-platform, 32 Barb. 397; 27 Ind. 59; 38 Ga. 409. Or in the baggage car: 59 Penn. State, 239; 1 Duer, 571; 20 Minn. 125. Or on the engine: Nashville & Chat. R. R. Co. vs. Erwin, (Tenn. R.) cited in 3d vol. Am. and Eng. R. R. cases, p. 465.

See also 1st vol. Am. and Eng. R. R., p. 82, citing Ky. R. R. vs. Thomas; 50 Mo. 139; 36 N. Y. 135; 3d Head, (Tenn.) 638; 14 How. 468.

We attach but little weight to the further contention of the defendant that contributory negligence was shown by Hanson in not leaving the train after he discovered the condition of the boiler or the insufficiency of the water in it, and after he was thus warned of his danger. Hanson's testimony, which is all there is on this point, clearly conveys the impression that the explosion instantaneously followed the discovery and his movement to leave the train. It is as follows:

*After being there* (on the engine) *a few minutes*, the engineer started toward the machinery, when witness glanced at the water gauge which was made of glass. (Being around machinery all of his life, he could tell that there was no water in the boiler, the gauge showed nothing but smulled foam and steam.) Witness told the engineer that there was something wrong with the engine. (He seemed then getting ready to start.) I told him I had been enough around machinery to know there was something wrong and I wanted to get off *and started to get off*. He told me that he knew what he was doing and to stay on, that he was running the engine. Witness knew nothing more until late that night, etc."

4. We have thus been brought to the conclusion from this review of the facts of the case and the legal questions involved, that plaintiff is entitled to recover.

His injuries were severe and his sufferings great, and the damages allowed should be commensurate with them. We think that he is justly entitled to two thousand dollars ($2,000).

---

ON APPLICATION FOR REHEARING.

The inference which might be drawn from the original opinion that the court assumed a position on the vexed question of the liability of railroads for injuries happening to persons who assume unusual and dangerous positions on trains, with the consent of em-

ployees, but against the rules of the company, is repelled. Enough was said in the opinion to support the liability of defendant, independent of this question.

FENNER, J.   Questions of negligence *vel non* depend upon the particular circumstances of the cases in which they arise; and general *dicta* must be confined, in their application, to particular facts.

On the general question of liability of railroad companies for accidents happening to persons who occupy unusual and peculiarly dangerous places on trains, even with the consent of employees, but against the rules of the company, authorities are conflicting and there. are many opposed to those cited in our original opinion.   See Beach on Contrib. Neg. p. 159; Pierce on Railroads, p. 317; Hutchinson on Carriers, p. 521.

The necessities of this case do not require us to assume any position on this question, and we now desire to repel the inference which might. be drawn from the original opinion that we have done so.

It is sufficient to say that, under the peculiar circumstances of this. case, and with reference to the particular fault here involved, plaintiff was guilty of no contributory negligence which legally debars him from recovery.

Enough was said in the opinion to sustain this view without reference to the general question above referred to.

We adhere to our conclusions and the rehearing is refused.