No. 13,747.

JOHN T. LYNN VS. ANTRIM LUMBER COMPANY, LIMITED.

105 451<br>106 174

SYLLABUS.

Although a logging railroad is not expected or required to be laid with the same care and security, nor to be operated with the same degree of prudence, as is demanded in the construction and operation of railway tracks in use by common carriers, nevertheless such road should be so constructed and operated as to render it reasonably safe for those whose employment necessitates their going upon such road and performing service in connection with the same.

APPEAL from the Second Judicial District, Parish of Bossier—
*Watkins, J.*

---

*A. J. Murff* for Plaintiff, Appellee.

---

*Purnell M. Milner* for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J.   Plaintiff sued to recover $2,958.50 damages for personal injuries sustained by him while engaged in coupling cars on defendant company's "logging" railroad. .

The defense was:—

1.   Assumption by plaintiff of the ordinary risks incident to the employment, and that the accident which befell him came within the scope of such risks.

2.   Contributory negligence.

The case was tried by jury, who returned a verdict in favor of the plaintiff for $1150, and from a judgment based thereon defendant prosecutes this appeal.   Answering the appeal plaintiff prays an increase of the award in his favor to the full amount demanded in his petition.

Defendant company conducts a saw and planing mill in the Parish of Bossier, and, as appurtenant thereto, operates a railway for the transportation of logs from the forest to the mill.

The day of the accident was November 17, 1899.   On the morning of that day the fireman of the logging train informed the manager of the company that the engineer had not reported for duty.   He, thereupon, received instructions from the manager to, himself, take charge of the train as acting engineer, and to employ the plaintiff to take his place as fireman.

The plaintiff, it seems, had been in the employ of the company at one time—about two years before; but had not lately been engaged in its service.   He was, however, seeking employment and had appeared that morning at the mill in quest of work.   He accepted the place tendered and immediately went out as fireman on the logging train.

The distance from the mill to where the logs were awaiting transportation was about eight miles.

When the train reached its destination, the fireman (plaintiff) was directed by the engineer to leave the engine and assist the brakeman in the duties of his position.   It seems the train crew consisted of the engineer, fireman and one brakeman, and that on account of the scarcity of hands it was part of the fireman's duty, on reaching the place where the cars were loaded with logs, to help in the work of side-. tracking the empty cars brought out, and of making up the train of loaded cars to take back to the mill.   At any rate, it was usual and customary for him to assist in this work—to aid the regular brakeman

in coupling and uncoupling cars. This he was ordered to do on the morning in question.

It was plaintiff's first day out. While he had done similar work during his former employment two years before, it was on a different spur track, and while some of the old cars were still in use, many new ones had meanwhile been bought by the company and were being used for the transportation of logs.

This particular track and road-bed plaintiff had not seen, or been employed on before; nor had he had previous experience in coupling these particular cars.

Obeying the orders of the engineer he had effected two couplings of the cars heavily laden with logs and was attempting the third when he was injured.

It was after this wise that he was injured:—

The only way to effect the coupling was to go between the cars, take the link and coupling pin in hand and when the impact came, when the draw-heads fitted in place, to adjust the link and drop the pin in place. Plaintiff took the usual position for a brakeman to occupy in coupling such cars. He stood by the end of the stationary car loaded with logs which was to be coupled to the train. The train of cars was signalled to back slowly and this was done. Plaintiff raised the link to effect the coupling, but owing to the fact that the car he was standing by was a high car and the one approaching was a low car, the proper connection was not made, and so great was the difference in this respect that the draw-heads or bumpers of the two cars failed to meet or come in contact at all—one passed above the other—and the result was that the cars came unduly together and plaintiff, by reason of this defect in the apparatus, this mismating or non-fitting of the draw-heads or bumpers, was caught between the cars and the logs with which both cars were loaded, and was mashed about the collar bone and shoulder and badly injured.

The evidence discloses that if these cars had been of equal or nearly equal height, as relates to their respective draw-heads or bumpers, the trouble would have been obviated.

It was occasioned directly by this mismating of cars and by defects of the road-bed. It was not impossible to effect the coupling of the two cars in question, notwithstanding their disparity in height, but it was impossible to effect their coupling on level ground.

After the injury to plaintiff the cars were coupled, but it was done by

pushing the higher one on to a lower level of the track and then bringing the lower car up to it on a higher level of the track.

Plaintiff had not been notified of this disparity or irregularity in the cars, and otherwise had no knowledge of the same.

He was injured within about fifteen minutes after he left the engine to assist in the coupling.

He explains that when he saw the impossibility of effecting the coupling, because of the mismating of the cars, he could not extricate himself from his then position in time to avoid injury.

John W. Martin, who was the acting engineer of the logging train when plaintiff was hurt, called as a witness for plaintiff, was asked:—

Q. If these bumpers had struck each other, a man could stand in between them—if the bumpers struck each other there was no danger?

A. No, sir; if the bumpers struck each other there was no danger to a man standing in between them.

Q. As an experienced man on the railroad, do you consider those cars safe? Just state whether or not you consider a man safe in coupling those cars. State whether you consider those cars are arranged in a safe manner, so that a man could go in there with safety and couple them?

A. No, sir, he could not. That's my opinion. He could not.

Q. It is a very dangerous process?

A. Yes; where a man has to lift anything with his hand, under those circumstances, it is a pretty dangerous business.

Q. And that was absolutely necessary in order to couple them?

A. Yes, you would have to get your pin set with one hand and pick up the link with the other.

Q. Was the uneven height of those draw-heads the cause of all that?

A. Yes.

Mr. C. A. Antrim, president of defendant company, called as a witness, testified that his logging road was equipped and operated about as such roads usually are, and that he considered the cars used substantial and suitable. He admitted, however, that the cars were of uneven height, that he would prefer cars of the same height if he could get them at the same price, and that it would be safer for his employees if the draw-heads or bumpers were of the same height.

*Ruling*—We are persuaded that the facts bring this case well within the rule announced in Bomar vs. La. North & South R. R. Co., 42 La. Ann. 983, where it was held that "it is the employer's duty to

provide suitable appliances," and that if the appliances in use are defective and the employee is injured in consequence of such defectiveness, the employer is responsible in damages. Also, where it was held that an employee is not guilty of contributory negligence when it is not shown he was aware of the defectiveness of the appliances used, and where he was ordinarily careful in the discharge of his duties.

In Towns vs. R. R. Co., 37 La. Ann. 634, the same proposition was thus announced:

"The law imposes the duty on the master of furnishing safe and suitable implements for the business, and makes him responsible for such damages as result from the failure to perform that duty."

And in Hanson, Tutor, vs. R. R. Co., 38 La. Ann. 111, it is found embodied in this form:

"Railroad companies are held to the greatest care and diligence, both in regard to the machinery and equipment of their roads and the acts of their officers and agents."

See also Dixon vs. Lumber Co., 52 La. Ann. 1109, and Ellis vs. Ry. Co., 95 N. Y. 546.

It may be true that logging railroads appurtenant to saw mills, constructed wholly on private grounds and operated for private purposes, may not be charged with all the duties and responsibilities incumbent upon common carriers, nevertheless such roads, or the company, individual, or association owning the same, are to be held to reasonable accountability in the matter of their construction, maintenance and operation.

Although a "logging" road is not expected or required to be laid with the same care and security, or to be as solid and complete as is demanded in the construction of railway tracks in use by common carriers, nevertheless it should be so constructed and operated as to render it secure to those whose employment necessitates their going upon such road and performing service in connection with the same. The handling, coupling, running of cars and hauling logs, etc., etc., upon such roads should be made reasonably safe to those engaged in that useful avocation.

This court, in affirming the doctrine here announced, said, in Van Amburg vs. R. R. Co., 37 La. Ann. 653:

"No company has any right to trifle with the lives of its employees, nor to put them in greater peril than is incident to the nature of their employment. It can not for the sake of economy or other causes fail

to make even its temporary structures sufficiently safe for the contingencies of its special work."

All around—as to the merits of the controversy, the determination of the issues, the amount of the award—we think the verdict of the jury meets fairly the requirements of the case, and the same is sustained.

Judgment affirmed.

Rehearing refused.

PROVOSTY, J., takes no part—this case having been submitted prior to his taking his seat on the bench.