## No. 13,868.

### FRANK DALY vs. CHRIST KIEL.

#### SYLLABUS.

1. One cannot be understood as contracting to take upon himself risks which are not apparent, and of which he has not been informed or warned against at the time of his employment.

2. The warning required to be given is an unequivocal one. It should not be left to inference. The situation should be explained, the danger pointed out, and the employee cautioned to be on his guard.

3. When this is not done, and the danger develops, becomes real and actual and the servant is injured, the master is answerable in damages.

APPEAL from the Thirteenth Judicial District, Parish of Rapides —*Blackman, J*

---

*Ryan & Blackman,* for Plaintiff, Appellee.

---

*Andrews & Hakenyos,* for Defendant, Appellant.

---

The opinion of the court was delivered by

BLANCHARD, J. Defendant, under contract with a Railroad Company, worked a gravel pit. He was getting out gravel for the Company. The means employed to get it out was a steam shovel, which was operated by an engine.

This engine was placed upon a kind of car, which was run on wheels

on a track laid after the fashion of railway tracks, and which had its connection with the main railway line.

The gravel was dug or scooped out of the hillside by the steam-shovel, which was attached to what is called "a crane." This crane was a movable lift which transferred the steam-shovel with its load of gravel to open cars stationed on the improvised track, where it was dumped, thus loading the cars, and then the crane conveyed the steam-shovel back to the gravel bank where the scooping process was gone through with again, and so on.

The track on which the engine and cars moved had to be extended gradually as the steam-shovel worked its way into the bank of gravel.

For this purpose the ground about the machine and in front of the engine had to be levelled, and this work of leveling and of track laying devolved on three laborers who were employed for the purpose.

The plaintiff was one of these laborers. He had never before worked in the gravel pit, and was a stranger in the neighborhood.

The evening before the day of the accident he reached, for the first time, the locality in question. He went there in quest of work. He applied to the superintendent in charge, representing the defendant, who engaged him as laborer, telling him to report at the pit for duty the next morning.

He did so, was assigned to work, and within an hour after beginning work met with the injury for which damages are herein claimed.

The amount sued for was $10,000. The case was tried by jury, who returned a verdict in favor of plaintiff for $1500, and defendant appeals. Plaintiff, answering the appeal, prays an increase in the amount awarded him.

The allegation of the petition is that plaintiff was placed in a perilous and dangerous position; that defendant, or his foreman in charge, knew it to be such; that plaintiff was ignorant of the danger; and that no warning was given him of the same.

It is explained that the danger of the situation grew out of the fact that the gravel was being quarried by means of steam power from a perpendicular bank some twenty feet high, and that this bank was liable to cave, bringing down great masses of gravel and earth.

The averment is that plaintiff was assigned to service under or in close proximity to this bank, that it caved without warning, that he was caught under it, and received severe injuries.

He represents he suffered greatly, is a cripple for life, and incapac-

itated from earning his livelihood by labor, and is otherwise without means of support.

The defense is that plaintiff was aware of whatever danger there was incident to the service in which he accepted employment, was duly and sufficiently warned of the same, and that he was injured as the result of his own negligence and want of care.

*Ruling*—Whether or not plaintiff was given sufficient warning of the dangers of the situation in which he was placed, is the controlling question in the case.

That the danger was not readily apparent, that plaintiff did not, himself, know of it, and thus needed to be warned, is, we think, sufficiently shown.

His statement, as a witness, is that when Mr. Self, the foreman of defendant, engaged him the evening before the day of his injury, he directed him to a boarding house, where he would find lodging, etc.

And then in answer to a question of his counsel as to the warning, if any, given him, he says:—

"No sir, he never gave me any warning. When I left the boarding house he said go down with Mr. Black, and one side is the bank where it caves, and the other side is the car side, and there ain't much danger."

About seven in the morning, at the time the work commenced, it seems Self, himself, went to the pit. He was engineer in charge of the work. And with reference to his presence there plaintiff testifies:—

"Mr. Self came down and told me to go over on the other side (meaning of the car on which the engine was) and dig that block out, that there was a rope attached and I could pull the block. He told me to keep both eyes on him and one on the bank. 'Watch him,' he says, 'and you will know all about it'—that was all the warning I got."

The "block" referred to was, as we understand it, a short, thick piece of timber through which a jack-screw penetrated.

There was one, perhaps two, on either side of the engine car and their purpose was to hold the machine steady.

The "Mr. Black" referred to was an employee at the pit. He had charge of the "crane."

His testimony is that where plaintiff was assigned to work was a dangerous place, because of the fact that the perpendicular bank of gravel was liable to cave at any time, and did do so several times daily. To the eye, however, he states it did not particularly present the idea of danger; that it looked safe.

He corroborates plaintiff's statement as to what Self said to the lat-

ter. That is, that Self told him to go over to that side of the engine car next to the bank and work, and to keep one eye on the bank and two on him; that he "could tell more by watching me (him) than by watching the dipper on the steam-shovel."

Asked in what manner was that said to Daly (the plaintiff) he replied:—

"Well, I don't know; I would take it in rather a light way, as though there was not much meaning to it."

And he further states he did not consider it "as any warning particularly."

Mr. Self, defendant's engineer, who employed the plaintiff, testifies that the morning the latter started to work, he was assigned to no particular place further than to level off the ground in front of the shovel. Asked if before plaintiff started to work, he (Self) had given him any warning as to the danger, he replied:—

"He and two other men were standing in front of the shovel and I looked at him and said your main work is to keep two eyes on the bank and the other on me."

Considering that the plaintiff was a new hand just employed, that he knew little of the character of the work and nothing of the dangers attendant on the same, that he was a stranger to the locality, and had never seen the gravel pit until the evening before, that he had not been around it or on the hill from which the gravel was being dug, that he had not seen a caving of the bank and had not been apprised of the danger to be apprehended from that source, we are of the opinion that what was said to him by the engineer and foreman the morning he started to work was not sufficient to warn him of the danger.

The caving of the bank was apprehended and expected by defendant. The danger from that cause was foreseen by him. It was not by the plaintiff.

Had the latter been sufficiently warned, had the situation been intelligently explained to him, and yet he had been caught and injured by the falling bank, he could not recover. But since he had no warning sufficient to put him on his guard he is entitled to recover.

McCarthy vs. Iron Works Co., 48 La. Ann. 980.

James vs. Lumber Co., 50 La. Ann. 717.

The principle that the servant assumes the ordinary risks and dangers of his employment and cannot hold the master responsible for an injury sustained in consequence of one of the risks incident to the service in which he engages, is recognized; but this case is regarded as not being within the rule.

One cannot be understood as contracting to take upon himself risks of which he has not been informed or warned against.

Stucke vs. R. R. Co., 50 La. Ann. 189.

Telling the plaintiff simply to keep two eyes on him (the engineer) and one on the bank, or one on him and two on the bank, is not deemed a sufficient explanation to a new hand of the danger to be apprehended from the bank. The words did not clearly convey the meaning which might have been intended. At most they left it to inference to be drawn by plaintiff that he meant the bank was expected to cave, to look out for its fall and avoid it.

It should not have been left to inference. The situation should have been explained, the danger pointed out and unequivocally warned against.

Myhan vs. Electric L. & P. Co., 41 La. Ann. 964.

Plaintiff should have been given to understand clearly by plain words that the bank was dangerous and he must first of all be on his guard against it. To a workman who had had experience the words of the engineer might have sufficed; to one who had only entered the service that moment, and who was injured within an hour of accepting the employment, they are held insufficient.

In not thus definitely warning the plaintiff the master subjected his servant to greater risks than fairly pertained to the employment and this constitutes negligence which entitles the servant to recover.

41 La. Ann., *supra,* 966.

Lynn vs. Antrim Lumber Co., 105 La. 451.

The facts of this case distinguish it from the "gravel pit" cases cited by defendant and found in 124 Ind. 326, and 53 Wis. 661.

The contention of defendant that plaintiff was not at his proper place when the bank caved, or that he should not have been where he was at the time, is not borne out by the testimony.

Nor is there force in his other contention that plaintiff could have escaped injury by running, even when the bank began to cave, by the exercise of reasonable care and agility.

With regard to the estimate of the jury in the amount allowed as damages, while it is thought to be a low figure, we are not inclined to increase it, in view of the fact that the jury saw the plaintiff, had him before them, and, doubtless, gauged his injuries from the way he appeared and handled himself. The doctor who testified said he considered him *temporarily* injured, though there would "always be a limping or laming."

The evidence on the ability of the defendant to respond in damages is meager, but the impression made by it is that he is a man of limited means, and it is likely the jury took this into consideration, as they could do, in arriving at the amount of their verdict.

Judgment affirmed.