[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 549 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 551 
This action was for damages for the wrongful act or neglect of the defendant, by which, as was alleged, the death of William F. Ellis, the intestate, was caused. The admissions by the pleadings, with the evidence given on the trial, show that at the time of his death the decedent was in the employ of the defendant as a brakeman and engaged in the actual discharge of his duties in working and running over its road a train of freight cars. This train had nearly reached its destination when another train of the defendant running in the same direction overtook it. The intestate was then in the caboose at the rear of the freight train, and seeing that a collision was imminent he went from the front door of the caboose toward a coal dump or car to which the caboose was fastened, and had apparently reached the platform of the caboose when at that moment the second train ran against the caboose forcing its platform under the coal dump "so that," as the witness says, "the whole body of the coal dump went up on the caboose platform," and the decedent was caught between the ends of the two cars and crushed to death. It was proven that each car was furnished with a buffing apparatus ten inches thick, but at such different elevations that instead of meeting to receive the concussion, they exposed to the blow only a surface of three-quarters of an inch and so overlapped each other, and were ineffectual for any useful or designed purpose.
On the part of the defendant it was claimed (1) that these *Page 552 
things were not evidence of negligence on its part; (2) that the negligence, if any, was that of the person making up the train, whom it was said must be deemed a fellow-servant of the deceased; (3) that the collision was the proximate cause of his death and resulted from the negligence of the persons in charge of the colliding train. The opinion of the trial judge was with the defendant, and he, therefore, dismissed the complaint. In this there was clear error.
It is no doubt settled in this State that an employe of a railroad company takes the natural risks of his employment, and among others the risk of injury resulting from the negligence of his fellow-servants. This rule, however, has no application if the company has at the same time disregarded its obligation to provide either a suitable road-bed or engines, cars, or other necessary appointments of the railroad, so that the injury is not entirely caused by the negligence of the fellow-servant, but in part at least is the result of that omission of duty. In such a case the negligence of the co-servant will not exonerate the company from the consequences of its own default. Here it was the duty of the defendant to provide a car properly fitted, not only with running apparatus, as wheels, stopping apparatus as a brake, but with buffers of some kind to protect the car and its servants, necessarily or lawfully, thereon from the effect of a collision. Ordinary and usual care in the equipment and running of a road requires this last appliance or some equivalent contrivance as much as it does either of the others. There was in effect no buffer nor any thing to take its place on the car upon which the intestate was employed. Upon the evidence it may be said that its absence was the proximate cause of injury. It was literally the causa causans. The immediate effect of its absence was to put the car in such condition that in case of collision at the rear its body must inevitably be impelled against the preceding car with a force to which it could offer no resistance. The death of the decedent was, therefore, caused by the omission of the defendant to place buffers where they belonged. For any useful or usual purpose *Page 553 
the ones in question might as well have been placed on the top or at the side of the car as where they were.
If we assume with the defendant that the persons in charge of the second train were negligent, or wrong-doers, still the primary and essential cause of the injury was the negligence of the defendant itself; and it is not competent for it to say that it is absolved from the consequences of its wrongful act by what those persons did. It is enough, however, if its fault or omission merely contributed to produce the injury complained of, or if it failed to exercise the care of an ordinarily prudent person, in supplying cars reasonably safe for the purposes for which they were required. In any aspect of the case there was evidence upon those questions which should have been submitted to the jury. (Canfield v. B. O.R.R. Co., 93 N.Y. 532; 45 Am.Rep. 268; Dana v. N.Y.C. H.R.R.R. Co., 92 N.Y. 639;Sheehan v. Same, 91 id. 332; Durkin v. Sharp, 88 id. 225;Booth v. Boston Albany R.R. Co., 73 id. 38; 29 Am. Rep. 97;Plank v. N.Y.C. H.R.R.R. Co., 60 N.Y. 607; Flike v.Boston Albany R.R. Co., 53 id. 550; 13 Am. Rep. 545.)
The argument on the part of the respondent presented the case of the defendant in many views, all resting, however, upon the assumption that, so far as the servant is concerned, the defendant has a right to manage its business in its own way, and with such means and appliances as best suit it. On the part of the appellant the qualification is added that such means and appliances shall be suitable and safe for the servant's use. The two propositions express the correct rule, and the cases cited by the learned counsel for the defendant can be satisfied with nothing less. In De Graff v. N.Y.C. H.R.R.R. Co. (76 N.Y. 125) it is also said that the degree of vigilance required from a railroad corporation in this respect is measured by the dangers to be apprehended or avoided; and in Salters v. D. H.C. Co. (3 Hun, 338) that the then defendant owed to the deceased, as its servant, the duty to place him under no risks from imperfect or inadequate machinery, or other material means or appliances known, or which, but for its negligence, *Page 554 
would have been known to it. These are the respondent's cases. Indeed, upon the point in issue the authorities in the courts of this State are all one way, and the principle on which they stand is adverse to defendant's contention. The law is very tolerant, but in the face of proof of injury from ill-contrived and unsafe machinery furnished for the servant's use it will indulge in no presumption that the master performed his duty, or that co-servants were negligent, and of neither of these circumstances was there any evidence. The case, therefore, was not well disposed of at the trial term.
It follows that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.
All concur.
Ordered accordingly.