## No. 1129.

### BEVERLEY TOWNS AND WIFE VS. THE VICKSBURG, SHREVEPORT & PACIFIC RAILROAD COMPANY.

The doctrine of non-liability of master to servant for injury resulting from fault of fellow-servant applies only when the fellow-servant's fault is the sole cause; but where the injury is attributable only partly to the fellow-servant's negligence and partly to the failure of the company to provide proper and suitable apparatus, the negligence will not exonerate the company from liability for its own fault.

While a railroad company is not the insurer of its employés and is not bound to provide the best possible means and appliances, it is bound to exercise reasonable and ordinary care to provide such suitable and safe apparatus as common experience shows to be proper in order to avoid exposing their employés to unnecessary danger.

A principal, if not the main, object of the *buffers* or *draw-heads*, usually attached to cars, is to prevent collision of cars in coupling and thereby to protect the brakemen who are compelled to stand between the cars in coupling.

Such provision is so ordinary and essential that their omission would be inexcusable negligence. Yet the use of cars of such unequal height that the buffers are inoperative, is more dangerous, because the defect is less observable.

In general freight trains, where the cars of many different companies are congregated under the necessities of through freight, it may be that, as there is no law compelling all companies to use cars of the same height and construction, the company might be excusable for using cars of unequal height; but in a construction train and where the cars all belong to the company itself and where the above excuse is inoperative, the construction and use of such cars is certainly negligence.

The death of the decedent in this case was caused by the failure of the company to place on its cars buffers, which would accomplish the purpose for which they were designed; and, there being no fault on decedent's part and no assumption of such a risk, and no valid excuse for the company's negligence, the company is liable.

APPEAL from the Fifth District Court Parish of Ouachita. *Richardson*, J.

*Boatner & Boatner* for Plaintiffs and Appellees.

*A. B. Pittman* and *Ludeling & Stillman* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The present action is brought by a father and mother for damages for an injury to their son, James Towns, inflicted by the cars of the defendant company and resulting in his death.

The facts are substantially as follows:

James Towns was in the employ of the defendant company as brakesman, on a construction train. At a certain point known as Russton Station, there were certain idle cars on the track which the conductor had received orders to remove to a side-track in order to make room for an approaching passenger train. At about dark in the evening, the conductor gave orders to the engineer and brakeman to effect the removal. To do this, it was necessary to run the train down to the stationary cars in order to couple with and draw them away.

The brakesman, Towns, in the performance of his duty and in obedience to the orders of his superiors, stood by to effect the coupling. He had placed the coupling pin in the hind-most car of the train, and then taking his position by the car which was to be attached, to be ready to make the coupling, gave the signal with his lantern for the engineer to back his train. The engineer obeyed the order. The train approached, and on reaching the car the coupling pin struck the draw-head and broke. The two meeting cars being of unequal height, the buffers or draw-heads did not meet, but one being elevated above the other, they passed each other, and the cars themselves came into collision, mashing the body of the unfortunate brakesman and inflicting upon him fatal injury.

The plaintiffs charge that the defendant is responsible on the grounds that the injury was attributable to the combined causes of, first, the reckless carelessness of the engineer in throwing back his engine with heavily loaded cars attached, against the stationary car with unusual and excessive speed; and, second, the insufficient and unsafe appliances which were provided for the coupling of the cars.

The company defends on the following grounds:

1. Contributory negligence of Towns.

2. That the company is not responsible for the negligence and carelessness of the engineer, who was the fellow-servant of Towns in a common employment.

3. That the inequality in the height of the cars and the consequent inefficiency of the buffers is not such a defect in the appliances and apparatus furnished by the company as constitutes legal negligence.

So far as the charge of contributory negligence is concerned, it has not the slightest foundation. The brakeman was where he was in the performance of his duty and in obedience to orders. There was no call for him to jump out of the way, because his duty required him ordinarily to remain; and the evidence is that his position did not enable

him to judge of the speed at which the train was thrown back or to anticipate that he would not, in any event, be protected by the buffers.

If the accident had been occasioned exclusively by the negligence and carelessness of the engineer, perhaps the defense of common employment might prevail. That doctrine has not had extensive application in this State, but it has nevertheless been recognized. Hubgh vs. Railroad.

There is a tendency in modern jurisprudence and legislation to limit the extreme operation which has been given to it by the courts of this country and of England. In the latter country the Parliament has intervened by the legislation known as the "Employers' Liability Act"

And here the Supreme Court of the United States has, in a very recent decision, placed a very important limitation upon it, by holding that the conductor of a train, who has the right to command and control the train and the employees, does not bear the relation of fellow-servant to the latter, and that the company is responsible to them for injuries resulting from his neglect of duty. R. R. Co. vs. Ross, 112 U. S. 377.

No doubt this principle might receive extension to other relations between officers having the right to command and subordinates subject to such command.

However, in the particular operation of coupling trains, doubtless the relations between engineer and brakeman have all the features of fellow-service; and, as already intimated, if the engineer's negligence were the sole cause of the injury, the overwhelming weight of authority would exempt the company from liability.

But it is now settled upon the very highest authority that where the injury is caused partly by the negligence of a fellow-servant and partly by the failure of the company to provide proper and suitable apparatus, the negligence of the co-servant will not exonerate the company from the consequences of its own default. Grand Trunk R. R. Co. vs. Cummings, 106 U. S. 700; Ellis vs. R. R. Co., 95 N. Y. 546.

In this case the evidence is conflicting as to whether the engineer was, in fact, guilty of any negligence or of backing with undue speed, and we might say that the evidence against it preponderates. It is, at all events, sufficiently established that the speed was not such as to have inflicted any injury upon the brakesman, had the buffers of the cars been in such position as to operate.

The question then remains whether the use of cars of such unequal height as to render their buffers useless, and the ordering of the coupling of such cars at night and without any particular warning, was,

under the circumstances of this case, a violation of the company's duty to furnish means and appliance reasonably suitable and safe for the servant's use in the performance of his duty.

It will not be disputed that a principal, if not the main, object of buffers is to prevent the collision of cars in coupling and thereby to protect the brakemen whose duty requires them to stand between the cars in performing that operation.

The provision of such buffers is so ordinary and essential as to make their omission inexcusable.

Now the use in the same train of cars of such unequal height that the buffers pass by instead of meeting each other, is the entire equivalent of omitting them altogether; or, rather, is a much more aggravated fault, because their total absence would be a noticeable warning of the consequent danger, while their presence in a condition of complete inefficiency is equally dangerous and less observable.

There are, doubtless, cases in which railroad companies may use cars of such unequal height and subject their brakemen to the peril of coupling them without being guilty of negligence. Thus, there is no mode of compelling all companies to use cars of like height and construction, and, in point of fact, they do not do so. Yet the necessities of commerce and, in some cases, the law of certain States, require companies to interchange and transport the cars of each other in carrying out contracts for through freight. Such interchange is essential to the cheap, speedy and convenient transportation of goods, and nearly every ordinary freight train is made up of cars belonging to a number of different companies.

If such cars are found of unequal height and with buffers not co-operative in coupling, the company using them may well repudiate all blame or fault for resulting injuries to its employes, as to whom its duty only requires proper and practicable care in furnishing safe and suitable apparatus. .

We have no doubt that the foregoing considerations had their weight in those decisions which are quoted, holding that the use of such cars is not negligence *per se* on the part of a company. Indeed, in some of the cases, those considerations are specially referred to.

But they are entirely inapplicable to the case in hand. The train on which this accident occurred was not a general freight train.

It was a construction train, and there is no showing or pretense that the cars therein or the cars to be coupled thereto, did not all belong to the company itself.

The question, therefore, is: whether it is negligence for a company to construct and use *its own* cars of such unequal height as to render their buffers useless, and thus to imperil the lives of their brakemen.

In matters of this kind, when one enters upon the study of the infinite number of adjudications which have been rendered by a multitude of courts, he encounters a maze of contradictory decisions and an infinite variety of qualifications of even generally accepted principles, which stupefy the mind and render it impossible to reach a conclusion consistent with them all.

But we think we may safely say that this principle is consecrated by a controlling weight of authority, viz: that while the railroad company is not the insurer of its employés and is not necessarily bound to employ the best possible means and appliances, it is bound to exercise reasonable and ordinary care to provide such suitable and safe apparatus as common experience shows to be proper in order to avoid exposing the lives of their employees to unnecessary danger in the discharge of their hazardous duties.

Certainly, the provisions of cars with buffers is a precaution of such accepted necessity and universal use as to place it within the requirements of the most ordinary reasonable care. If such care requires such provision, it equally requires that they should be provided in such manner as to effect the purposes for which they are designed; and a neglect to make such provision is unquestionably a fault rendering it responsible for resulting injuries, unless, at least, it were clearly shown that the employee, fully cognizant of the defect, had voluntarily and intelligently accepted the hazard.

There is no sufficient evidence that such was the case here. The coupling took place at night. It was in a train of cars belonging to the company and, as to which, there was no reason to suspect such a defect. There was no time or opportunity to measure the height of the cars to be connected, and even though the use of the "goose-neck" link might have suggested some difference, it did not at all follow that the difference was such as would permit the buffers to pass each other without sufficient contact to prevent collision.

We find it impossible to say that the brakemen knew or accepted the risk of so great a defect.

We find this case to be completely covered by a recent decision of the Court of Appeals of New York analagous to this in every essential respect. The party injured was a brakeman; the injury resulted from a like defect in the cars; the defense was the same as in this case.

Towns vs. Railroad Company.

The court said : " It is no doubt settled in this State that an employé of a railroad company takes the natural risks of his employment and among others the risk of injury resulting from the negligence of his fellow-servants.

This rule, however, has no application, if the company has at the same time disregarded its obligation to provide suitable cars or other necessary apparatus, so that the injury is not entirely caused by the negligence of the fellow-servant, but, in part at least, is the result of that omission of duty.   In such a case the negligence of the co-servant will not exonerate the company from the consequences of its own default.   Here it was the duty of defendant to provide a car properly fitted, not only with the running apparatus, as wheels, stopping apparatus, as a brake, but with buffers of some kind to protect the car and its servants necessarily or lawfully thereon from the effect of a collision.   Ordinary and usual care in the equipment and running of a road requires this last appliance or some equivalent contrivance as much as it does neither of the others.   There was, in effect, no buffer or anything to take its place on the cars upon which the intestate was employed.   *   *   *   The death of the decedent was, therefore, caused by the omission of the defendant to place buffers where they belonged. For any useful or usual purpose, the ones in question might as well have been placed on the top or at the side of the car as where they were."   The statement of facts shows that the cars were provided with buffing apparatus, " but at such different elevations that, instead of meeting to receive the concussion, they were ineffectual for any useful or designed purpose."   The court held the company liable. Ellis vs. Railway Co., 95 N. Y. 546.

It is not to be denied that the learned counsel for defendant has referred to decisions opposed to the above; but the latter commends itself equally to our reason and sense of humanity.

The vast development of railroads, the immense army of servants whom they employ and who adopt such service as their exclusive avocation, with many other considerations, emphasize the duty of the companies to provide all reasonable safeguards for their protection in their hazardous employment and not to oppress them with the hard option of either exposing their lives to risk or of abandoning their means of livelihood.

## II.

The defense based on Art.—— of the Code is disposed of by the decision in Van Ambergh vs. same defendant, just decided.

III.

As to the quantum of damages, we feel bound to reduce it.

The plaintiffs are only entitled to such damages as the deceased himself could have claimed had he recovered at the moment when he died; that is compensation for the suffering endured by him between the accident and death. This was about four hours.

In the Vredemburg case, where the decedent suffered torture during twenty-eight days, we reduced the verdict from $15,000 to $7,500.

In the Poirier case, (35 Ann. 699), where the scalded victim was in agony for twenty-four hours, we reduced the allowance from $12,000 to $2,500.

While we do not pretend to lay down any exact arithmetical rule of proportion in the estimate of such damages, yet they must bear some kind of reasonable relation to each other in different cases—with the reserve, however, that the damages should always be substantial.

We think, in this case, the amount allowed should be reduced to one thousand dollars.

It is, therefore, ordered, that the verdict and judgment appealed from be amended by reducing the same to one thousand dollars, and that, as thus amended, the same be affirmed, appellees to pay costs of the appeal.