Wallis vs. Railroad and Steamship Company.

· No. 9606.

MORLEY H. WALLIS VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD
AND STEAMSHIP COMPANY.

A servant who assumes the discharge of duties, the nature and mode of performance of
    which are fully known to him, voluntarily subjects himself to risks necessarily incident
    thereto, and unless such risks were increased by some other fault or negligence of the
    master, injury resulting therefrom will not be the subject of reparation by the master.

In the operation of coupling trains the relation between engineer and brakeman is that of
    fellow-servants and subject to the rule that the master is not liable for injury occasioned
    to one servant by the fault of another servant, in absence of proof of fault in the mas-
    ter in the employment or retention of the latter.

In this case the evidence fails to establish any fault or negligence for which defendant is
    responsible but shows that the injury resulted from the mischievous act of an unknown
    third person, for whose act the defendant was not responsible.

APPEAL from the Nineteenth District Court, Parish of Terrebonne.
    *Goode*, J.

*L. F. Suthon* for Plaintiff and Appellee:

1.  In actions of damage for trespass, the Morgan's Louisiana and Texas Railroad Com-
    pany is amenable to the jurisdiction of the Court where the trespass occurs. Act No.
    37, Session Acts of 1877, page 37, section No. 12; 33 Ann. p. 955; 36 Ann. 186.
2.  Where an employe is injured by a railway accident, and the act that caused the dam-
    age could have been prevented by the railroad company, it is liable for damages under
    positive provisions of the Civil Code. R. C. C., art. 176, 2320.
3.  The conductor of a train, who has control of its movements and of the employes of the
    train, is the representative of the company and not an ordinary employe. Decision of
    S. C. of U. S. in Chicago, M. & St. P. R'y. Co. vs. Ross, reported in American Law
    Reg., February 1885; also in Chicago, L. N. & Albany L. J., 1885.
4.  In the assessment of damages the verdict of the jury is entitled to great respect.

*Leovy & Leovy* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   The plaintiff claims damages for injury suffered by him
incurred in the process of coupling cars while he was acting in the
capacity of brakeman on defendant's road.

The issues will be much simplified by quoting that portion of plain-
tiff's petition relating to the accident, its causes, and the grounds on
which defendant's liability is charged.

After reciting his employment as brakeman on that portion of de-
fendant's road known as the "Houma Branch," the petition proceeds:
"that the train runs over said road four times a day;  *   *   that the
main business of said branch road in the winter season is the trans-
portation of sugar and molasses, which is loaded in cars left at the
different plantations on the route, the empty cars being brought down
from Terrebonne station by the last train for the day from said station

and distributed on the route; that said empty cars are left in charge of the planters and laborers on plantations who load them over night, and they are taken up the next morning by the first train from Houma which conveys them as far as Terrebonne station, where they are transferred to the main line of said company.

That, at most of the plantations on the Houma branch, switches or side-tracks have been constructed, on which to leave the cars for the purpose of being loaded, but that at some of the plantations, there are no side-tracks and notably at what is known as the Isle de Cuba plantation, about two miles from Terrebonne station; that at said plantation the empty cars when needed are left in the evening by the train from Terrebonne station on the main line of said branch road and are taken up, when loaded, in the morning and coupled on ahead of the engine and are thus pushed up to Terrebonne station ahead of the train, a distance of about two miles.

Petitioner alleges that it was his duty as brakeman to stand on the flange of the cow-catcher of the engine and couple the cars to the engine; that on the morning of the 30th of November, 1883, at the Isle de Cuba plantation, there was a car loaded with sugar to be coupled ahead of the engine, and your petitioner was at the post of duty to make the coupling; that said car had its brakes off, they having been taken off during the night of November by some person unknown to petitioner, and said car was only held in position by a large stick of wood back of its wheels across the track; that, as the train approached the car, one of the laborers on the plantation re-moved the stick of wood, and the said car began moving down the track towards the train, there being a grade or incline at that point; that the train moved on towards the advancing car, the result being that, though petitioner stood at his post in the prudent discharge of his duty and made the coupling, the iron bar snapped in two like a brittle stick from the weight of the two meeting bodies, a collision took place and your petitioner was caught between the loaded car and the engine, and was injured as fully described in the petition. It then further proceeds: "Now your petitioner charges that the injuries received by him as aforesaid, are directly attributable and due to the fault and negligence of the defendant company: *First*, because they failed or neglected to construct a proper switch or side-track at said Isle de Cuba plantation on which to place the cars left to be loaded; and *secondly*, because it was gross and repeated negligence on the part of said company to leave cars on their main line in the hands of planters and ignorant plantation laborers, who know nothing about hand-

ling cars and especially so at a point where there is a grade or incline in the track as at the Isle de Cuba plantation as aforesaid.

Your petitioner further alleges that the injuries received by him as aforesaid were due, in addition to the causes above alleged, to the negligence, unskilfulness and unfitness of the engineer in the employ of said company and in charge of the engine at time of said accident ; that said engineer, George Williams by name, is habitually careless and unskilful, and by reason of his defective vision and nervousness is altogether unfit for the duties imposed on him by his position. That the unfitness of said Williams as an engineer, was well known to the defendant company prior to the accident aforesaid or could have been found out by said company by the use of due care, so manifest was his said unfitness, and said company is responsible for all damages resulting from his incompetency. That, at the time of said accident, though he was signalled to reverse his engine in time to prevent the accident, he did not do so until it was too late to prevent the collision and nearly kill your petitioner.

Petitioner alleges that, for the causes above set forth, the defendant company is justly liable to him in the sum of $25,000 damages for the excruciating pains inflicted upon him, etc.

From a verdict and judgment for $12,500 in favor of plaintiff, this appeal is taken.

The foregoing extensive extracts from the well-drawn petition in this case should serve to abbreviate, rather than to lengthen, our opinion, since it places the whole case of plaintiff in full view.

It will be observed that the grounds of fault or negligence on which the alleged liability of defendant is based are distinctly set forth and are as follows:

1st. Failure to construct a switch or side-track at the Isle de Cuba plantation on which to place cars left there to be loaded.

We fail to perceive any fault in this. The "Houma Branch" was a short road built for local accommodation with a single track, on which only one train ran which passed back and forth.

The only difference between leaving cars to be loaded on a switch and leaving them on the main track, was that, in the former case, they could be coupled to the rear of the train while, in the latter, they were coupled to the engine in front and pushed to their destination.

The latter mode of coupling and moving cars for short distances is shown to be frequent and common on railroads, when circumstances require it, and the proof establishes that, so far as the mere operation

of coupling is concerned, which is the only matter here involved, it is rather less, than more, dangerous than the ordinary mode of coupling in the rear.

Moreover, the petition specifically alleges that such was defendant's customary mode of operation at this particular plantation, and defines his own habitual duties in connection therewith. Having assumed and continued in the discharge of said duties, with full knowledge of their nature, he voluntarily subjected himself to the risk necessarily incident thereto, and unless that risk was increased by some other fault or negligence of the master, the law will not allow him to hold the latter responsible therefor. Satterlee vs. Morgan Co. 35 Ann. 1166; Rover on Railroads, p. 1198; Pierce on Railroads, p. 379, 380; Wood on Master and Servant, p. 698, and numerous authorities cited in above treatises.

2d. The next fault charged consists in leaving cars on their main line, to be loaded, in the hands of planters and laborers, especially at a point where there is an incline in the track as at Isle de Cuba plantation. But the petition had already alleged that such was defendant's habitual mode of conducting its business at sundry plantations and especially at this particular one, to plaintiff's full knowledge, and the principle and authorities just cited apply equally here.

Nor do we perceive the existence on any fault or negligence in the above conduct. A car on a railroad track with no engine attached is not like a wild and dangerous animal, but is ordinarily as innocent and incapable of harm as any inanimate object. Nor was there anything in the incline, about which so much is said, to suggest the necessity of any particular care. The incline was only 156 feet in length; the fall in that distance was but six or eight inches; and a heavily loaded car started down it, if its running gear were in the best possible condition, would only attain at the bottom a maximum speed of three and one-half miles per hour, not greater than that of a man walking rapidly.

The existence of such inclines is not ordinarily attended with danger, and they are so common and often necessary in railroad construction that this cannot be attributed to the company as negligence *per se* or as a fault in the construction of the road.

The leaving of a car, with brakes down, on such an incline, was, under all ordinary circumstances, perfectly safe and no reasonable prudence or foresight could have anticipated any injury likely to result therefrom.

We must therefore acquit defendant of any negligence on this score.

3d.  It is next charged that the injury was caused by the habitual carelessness and unskillfulness of the engineer and by his unfitness resulting from defective vision and nervousness, all of which defects were known to the defendant or, with the use of due care, should have been known.

The evidence wholly fails to sustain this charge.  On the contrary it establishes, for the engineer, the highest reputation, earned by long service, for skill, competency, carefullness and firmness in the discharge of the duties of his profession.  It is true he was affected to a slight extent, with *strabismus*, commonly known as squint-eye, but the medical testimony shows that it did not exist in a degree to interfere appreciably with his power of sight, and it is otherwise proved that he possessed normal acuteness, correctness and range of vision.

4th.  It is finally urged that the accident resulted from the negligence of the engineer who, "though signalled to reverse his engine, in time to prevent the accident, did not do so until it was too late."

If this were true, it would not avail plaintiff.  We had occasion very recently to say: "in the particular operation of coupling trains, doubtless the relation between engineer and brakeman have all the features of fellow-service, and if the engineer's negligence were the sole cause of the injury, the overwhelming weight of authority would exempt the company from liability."  Towns vs. R. R. Co. 37 Ann. 632.

The general principle that the master is not liable for injury occasioned to a servant by the negligence of a fellow-servant, in absence of proof or fault or negligence in the employment or retention of the latter, may now be considered as firmly settled in Louisiana.  Hubgh vs. Carrollton, 6 Ann. 495; Satterlee vs. Morgan, 35 Ann. 1166; Poirier vs. Carroll, id. 699; Towns vs. R. R. Co., 37 Ann. 632.

We must add, however, that the charge of negligence against the engineer is not sustained by the proof.  The allegation that he failed to reverse his engine when signalled, is contradicted by plaintiff's own evidence, which admits that he reversed as soon as plaintiff signalled him to do so, but says it was then too late and that it should have been done sooner.  Why plaintiff did not signal sooner is not explained. But the engineer's testimony shows that he han reversed the engine before any signal was given and as soon as the danger was apparent, but the distance was so short that the only effect was to bring the train to a standstill, without causing it to retire from the approaching car.  The result was that what is called the "slack" was taken out of the train, all the cars being jammed together, and thus opposed as a solid deadweight, which increased the violence of the collison and caused the

breaking of the coupling bar, which is shown to have been, in every respect, of proper size and quality.

We believe the engineer did everything that was possible under the circumstances.

The true cause of the accident was that, as the train was moving up prudently and properly to make the coupling with the stationary car, some person unknown removed the stick of wood which chocked the wheels of the latter, which started it down the incline at a time when it was too late for the train to avoid the collision. The identity of this person is not established. One witness says it was a white, another that it was a colored, man. He may have been a mere mischief-maker. At all events, there is no pretence that he was an employee of the company, or that the latter is in any way responsible for his wanton act.

We feel great sympathy with plaintiff because he was injured in the discharge of his duty, and especially on account of the courage with which he kept his post in the presence of impending danger. The suggestion that this was to be imputed to him as contributory negligence would find no favor at our hands.

But we are bound to hold that this record establishes no fault on the part of the defendant company which obliges it to repair the damage which plaintiff has suffered. We will not say that different principles might not have applied had the person injured been a passenger.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now decreed that there be judgment in favor of defendant rejecting plaintiff's demand at the latter's cost in both courts.

Rehearing refused.