(46 South. 203.)

No. 16,800.

DAY v. LOUISIANA WESTERN R. CO.

(March 30, 1908. Rehearing Denied April 27, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT —CONTRIBUTORY NEGLIGENCE.

Where the servant undertakes to discharge the duty for which he is employed in a manner more hazardous than that contemplated or required, he assumes the risk, and there can be no recovery of damages for injury resulting therefrom. Thus, where a railroad switchman is warned, by a rule of the company employing him and by special admonition, not to attempt to uncouple moving cars, and, whilst between two cars for the purpose of uncoupling them, signals the engineer to move, he assumes the resulting risk of such movement. Nor does it affect the question that his failure to get out in time to save himself is caused by his getting his foot wedged between the guard and the track rails; for, though it should be conceded that the company was negligent in failing to block the space between the two rails, the danger resulting therefrom would not have affected the switchman if he had been discharging his duty in the manner contemplated by his employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 559–566.]

2. SAME—NEGLIGENCE OF FELLOW SERVANT.

Where a locomotive engineer and a switchman are members of a switching crew operating in a railroad yard, the movements of the switch engine being directed by the signals of the switchman, the two are fellow servants, and there can be no recovery of damages for injuries resulting to the switchman from the negligence of the engineer, unless it be alleged and proved that the latter was incompetent or negligent to the knowledge of the common employer, or such knowledge can fairly be imputed to the common employer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 493–514.]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by Annie Day, individually and as natural tutrix, against the Louisiana Western Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

Denègre & Blair and Pujo, Moss & Sugar, for appellant. Paul Ambrose Sompayrac, for appellee.

### Statement of the Case.

MONROE, J. This case comes up on appeal from a verdict and judgment awarding damages for the death of plaintiff's husband, the father of her minor children, resulting from the supposed negligence of the defendant, by whom the deceased was employed as a switchman; the facts being as follows:

The deceased had been in defendant's employ as an inspector in its yard at Lake Charles for some 18 months, and was then assigned to duty as a switchman, and worked in that capacity for about 2 months, when he met with the accident from which the suit arises.

It appears that on January 22, 1906, between 3:30 and 5 o'clock p. m., he was engaged in switching cars, with a crew of five men, consisting, besides himself, of another switchman, a foreman, an engineer, and a fireman. There were four freight cars in front of the engine, and with a view of leaving the two end cars upon a side track the train had been brought into such a position that the engine and the two cars nearer to it were practically on the main track, whilst the other two cars were on the side track, but not quite clear of the main track; the point of junction, or coupling, between the two middle cars of the train being just about over the frog of the switch, so that a light push, or "kick," from the engine was necessary to clear the two first mentioned of the main track. · In that situation Day (the deceased) went between the cars for the purpose of uncoupling them, and, as the required kick was given, getting his left foot wedged

between the guard and track rails, had his leg cut off below the knee, from which injury he died the next morning. It is undisputed that, so far as its movements were concerned, the train was at that time entirely under his control, and the explanation given by the engineer, who alone can be said to have seen the accident, is that the train had come to a "dead stop"; that Day went between the cars; that he then gave the "kick signal," which meant that the engine was to move forward with sufficient force to clear the two end cars (which were supposed to have been by that time uncoupled) of the main track; that he (the engineer) obeyed the signal, moving the engine forward until he supposed he had given the cars the required velocity—a distance of say 54 feet—when he put on the brakes without further signal; and that Day then fell out on his face, the cars, as it turned out, not having been uncoupled. It appears that the cars which the deceased attempted to uncouple were provided with a mechanical contrivance by which they could be coupled and uncoupled from the outside (without going between them), and there is some evidence to the effect that the contrivance was examined within an hour after the accident, and that it could then be "operated." Whether it could be operated with ease or with difficulty, and whether the testimony on the subject applies to both, or to but one, of them, are matters that are not made clear, and the engineer says:

"We started to kick them; but we could not get them cut off, for some cause."

From this we infer that the uncoupler did not work easily, and that Day found it necessary to go between the cars in order to perform its function. It is shown that a rule of the company, to which Day's attention had been called, warns the employés against going between the cars, while they are in motion, for the purpose of coupling or

uncoupling them; that Day was wearing, at the time of the accident, a pair of rubber boots, and that he had been cautioned, in the morning, that it was dangerous for him to do so; that the space between the guard rail in question and the track rail was not blocked; and that Day's left foot, with part of the leg attached, was found jammed therein, after the accident, and was removed with the aid of a crowbar. It is further shown that Day was permitted to lie upon the ground for 30 or 40 minutes after the accident, that it was cold and damp, and that his chances of recovery were not thereby improved; but, whilst this may have been injudicious, we are satisfied that there was no deliberate inhumanity—those who were about him, and there were many, acting according to their lights and for what they believed to be the best, or in ignorance as to what should be done. The engineer is shown to have been in defendant's employ since 1889, and to have been an engineer for nearly 12 years, and there is no suggestion that he had ever been found careless or incompetent.

## Opinion.

If the engineer saw Day go between the cars, it is inconceivable that he should have started the train, unless he believed that he (Day) had signaled him to do so; and, upon a first impression, it seems inconceivable that Day should have given the signal whilst he was between the cars. The engineer is, however, positive in his statement that Day gave him the "kick signal," and there is absolutely nothing in the record, save the peculiar circumstances that have been stated, to cast a doubt on his veracity. His testimony, it is true, is not as clear in some particulars as it might have been, if he had been more exhaustively examined; but, considering his statement that Day could not get the cars cut off (or uncoupled) "for some cause," in connection with his testimony as to the giving of the signal, our conclusion is that Day, being an active man, and finding that the coupling was jammed, and would probably remain so while the cars were at rest, decided to have the cars put in motion, to uncouple them the moment their position should be changed, and to take the risk of then getting out, and hence that, with his left foot on the rail, he gave the signal, but that, before he could accomplish his further purpose, his foot, with the rubber boot on it, had slipped and became wedged between the two rails, and he was run over. Even, however, were we satisfied that the engineer was at fault, it would not follow that the defendant should be held liable, on that account, for the damages claimed. This court has heretofore said:

"Whilst the doctrine of the nonliability of the master for injuries sustained by a servant in his employ, through the incompetency or negligence of another servant employed by him, has not been recognized in this state as including certain classes of cases to which it has been applied by the English and by some American courts, the case stated in the petition—i. e., an ordinary case of a brakeman, injured through the fault of an engineer, when both are engaged in handling the same train, in the service of the same employer—is one to which, under our jurisprudence, as well as the jurisprudence elsewhere, that doctrine is properly applicable. Hubgh v. N. O. & C. R. Co., 6 La. Ann. 495, 54 Am. Dec. 565; Satterly v. Morgan, 35 La. Ann. 1166; Towns v. Railroad Co., 37 La. Ann. 630, 55 Am. Rep. 508; Wallis v. Railroad Co., 38 La. Ann. 160; Dandie v. Railroad Co., 42 La. Ann. 689, 7 South. 792. Stating the doctrine thus referred to more specifically, for the purposes of the instant case, it is that an engineer and brakeman, employed by the same master and engaged in handling the same train, are fellow servants, each of whom, by virtue of his acceptance of such service, assumes the risk resulting from the incompetency or negligence of the other, and acquits the master of liability for injury which he may sustain thereby, provided the master has not employed or retained the incompetent or negligent one, knowing him to be incompetent or negligent, or when, by the exercise of reasonable care, he might have informed himself of such unfitness." Bell v. Globe Lumber Company, 107 La. 731, 732, 31 South. 994.

We are not now disposed to go beyond the position thus stated, nor yet to recede from it; and we are of opinion that plaintiff could

in no event recover upon the ground of the negligence of defendant's engineer, since the relations between the deceased and the engineer cannot, on principle, be distinguished from those which subsist between a brakeman and an engineer, and it is not alleged or shown that the engineer, in this instance, was incompetent or negligent, or that defendant was at fault in employing or retaining him. Upon the other hand, assuming the conclusion reached by us as to the facts to be correct, there can be no recovery on the ground of the alleged negligence of the defendant in failing to block the space between the guard and the track rails, since that failure, if it should be regarded as negligence, would not have affected the safety of the deceased, if he had been discharging his duty as a switchman in the manner contemplated by his employment. It was he, and not the defendant, who assumed the extraordinary risk resulting from his undertaking to remain between the cars while they were in motion, and so uncouple them—a risk which he was not required to take, and was not justified in taking, no matter what may have been the condition of the uncoupling contrivance.

The views thus expressed render unnecessary the consideration of other points relied on by the defendant.

For the reasons assigned, it is adjudged and decreed that the judgment appealed from be annulled, avoided, and reversed, and that plaintiff's demand be rejected, and this suit dismissed, at her cost in both courts.