JOHN G. KELLY, as Administrator of the Estate of JOHN H. KELLY, Deceased, Respondent, v. THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

NEGLIGENCE — MASTER AND SERVANT — DEATH OF RAILROAD BRAKE-MAN ARISING FROM NEGLIGENCE OF CO-EMPLOYEES.  The facts examined in an action against a railroad company to recover for the death of the plaintiff's intestate while in the discharge of his duty as a brakeman on the defendant's road, which occurred through the explosion of a car of dynamite alleged to have been caused by the combined negligence of the intestate's co-employees and of the defendant; and *held*, not to show any negligence by the defendant contributing to the accident, but to clearly show that a rule of the defendant, requiring the placing of cars containing explosives as near the middle of a train as possible, had not been obeyed by the intestate's co-employees; that whether the dynamite in the car would have exploded had the rule been obeyed and whether, if it had, the intestate would have been injured thereby are matters of pure specula-tion; that, therefore, the death of the intestate was wholly the result of the negligence of his fellow-servants for which the defendant is not responsible.

*Kelly* v. *D., L. & W. R. R. Co.*, 118 App. Div. 432, reversed.

(Argued April 24, 1908; decided May 19, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 25, 1907, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick Collin* for appellant.  There was not any proof of negligence on the part of the defendant compelling or jus-tifying the submission to the jury of the question of defend-ant's negligence. (*Milbaur* v. *Richard*, 188 N. Y. 453; *McArdell* v. *Olcott*, 189 N. Y. 368; *Rende* v. *N. Y. & T. S. S. Co.*, 187 N. Y. 382; *Bernardi* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 454; *Hawkins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416; *Bailey* v. *D. & H. C. Co.*, 27 App. Div.

305; *Byrnes* v. *N. Y., L. E. & W. R. R. Co.*, 113 N. Y. 251; *Ford* v. *L. S. & M. S. Ry. Co.*, 117 N. Y. 638; 124 N. Y. 493; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77.) The selection and loading of the car was not a proximate cause of the injury to plaintiff's intestate. (*McGovern* v. *D.-McL. C. Co.*, 120 App. Div. 524; *Leeds* v. *N. Y. Tel. Co.*, 178 N. Y. 118; *Laidlaw* v. *Sage*, 158 N. Y. 73; *N. Y., C. & St. L. R. R. Co.* v. *Perriguey*, 138 Ind. 414; *Dulfer* v. *B. H. R. R. Co.*, 115 App. Div. 670; *Edgar* v. *R. G. W. Ry. Co.*, 90 Pac. Rep. 745; *Trapp* v. *McClellan*, 68 App. Div. 362; *Kiefer* v. *Hummelstown*, 151 Penn. St. 304; *Am. Bridge Co.* v. *Seeds*, 144 Fed. Rep. 605; *Beetz* v. *City of Brooklyn*, 10 App. Div. 382.)

*H. Rockwell* for respondent. It was for the jury to say whether the acceptance and agreement to transport this car loaded with high explosives over its railroad, in violation of defendant's own rule that "cars for carrying this explosive must be first class in every respect" was negligent. (*Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 394; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 398; *B. & P. R. R. Co.* v. *Mackey*, 157 U. S. 72.) Whether the placing of the car in question at the rear of defendant's train was an act of the master, under all the circumstances in this case, was a question for the jury. (*Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 420; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Fuller* v. *Jewett*, 80 N. Y. 46; *Malone* v. *Hathaway*, 64 N. Y. 5; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38; *Darwin* v. *Herman*, 23 J. & S. 274; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549.)

CHASE, J. A careful statement of the facts shown by uncontradicted evidence upon the trial leads to the conclusion that the death of the plaintiff's intestate was wholly the result of negligence of fellow-servants of the intestate for which the defendant is not legally responsible.

On the day of the accident on which the intestate lost his life a scheduled freight train known as No. 61 was made up at Scranton, Pa., to go west. The crew for that train came to the railroad yard and obtained their engine and were directed by the assistant yardmaster to take twenty-five cars that were standing on one track and ten cars that were standing on another track in said yard. The twenty-five cars were equipped with air brakes and the ten cars were not equipped with air brakes. They made up their train by attaching the engine to the twenty-five cars and then with such cars they switched upon the other track and attached the ten cars in the rear of the twenty-five cars. A caboose was connected at the rear of the train and they then proceeded toward Buffalo by way of Binghamton. The second car from the caboose was a box car first class in every respect unless by reason of the fact that it was not equipped with air brakes. It was loaded with 24,000 pounds of dynamite and on the sides and ends of the car were placed white placards two feet long and eight inches wide upon which were printed in large red letters the words : " High explosives. Handle with care." This car came from Hopatcong, N. J., where it had been loaded and its destination was a place west of Buffalo. The first car ahead of the caboose and eight of the twenty-five cars fitted with air brakes were marked for Binghamton. When the train arrived at Binghamton the car ahead of the caboose and the eight cars mentioned were cut out from the train. There were twenty-five cars then at Binghanton to be taken into the train. The train was made up by attaching the seventeen cars left of those fitted with air brakes taken at Scranton next to the engine. In the rear of the seventeen cars were attached the twenty-five cars standing at Binghamton, and behind them were attached the remaining nine cars not fitted with air brakes taken at Scranton, thus leaving the car loaded with dynamite the last freight car of the train to which was attached the caboose, and the train proceeded west. At Vestal, a station a short distance west of Binghamton, the train stopped to obtain water for the engine. Twenty or twenty-five min-

utes after this train left Scranton another freight train consisting of sixty loaded coal cars, not a scheduled train but known as a " wildcat," left Scranton following train No. 61. The wildcat train was drawn by two engines and the intestate was the head brakemen of that train and was at the time of the accident riding in the cab with the engineer of the second engine. After the water tank in the tender connected with the engine on train No. 61 was filled, the train started west, but had gone only seven or eight car lengths when the wildcat train, proceeding at the rate of from 20 to 25 miles per hour, came upon and crashed into the caboose of train No. 61. The engines and many of the cars of the wildcat train were piled upon one another, and the coal with which the cars were loaded was thrown into a pile about the place where the collision occurred until the pile was eight or ten feet deep, thirty feet wide and about fifty feet in length. Immediately following the collision the dynamite in the car ahead of the caboose exploded with terrible effect, not necessary now to describe. The intestate and others were killed.

It is conceded that the collision was wholly caused by negligence of the co-employees of the intestate. It is claimed by the plaintiff, however, that the intestate was killed by the explosion, and that the explosion was caused by the combined negligence of the intestate's co-employees and of the defendant. He quotes from the opinion in *Ellis* v. *N. Y., L. E. & W. R. R. Co.* (95 N. Y. 546), where, after referring to the rule that employees of a railroad company take the risk of injury resulting from the negligence of a co-employee, the court say : " This rule, however, has no application if the company has at the same time disregarded its obligation to provide either a suitable roadbed or engines, cars or other necessary appointments of the railroad, so that the injury is not entirely caused by the negligence of the fellow-servant, but in part at least is the result of that omission of duty. In such a case the negligence of the co-servant will not exonerate the company from the consequences of its own default."

Plaintiff claims that the defendant was negligent in not

furnishing a car equipped with air brakes in which to transport the dynamite, and also in not placing the car in the middle of the train. The necessity for having the car equipped with air brakes and for placing the same as nearly as possible in the middle of the train is assumed by the plaintiff because of the rules promulgated by the defendant. Among the rules so promulgated by the defendant are the following:

" *Eighth.* Agents must know that none of the above explosive substances are loaded at their stations in old cars, having loose boards or cracks in the roofs, or sides, or in cars with ventilators of any description, or with end doors. Cars for carrying these explosives must be first-class in every respect, must be tight everywhere, and must have doors that can be closely shut, leaving no ·cracks where sparks can get in. When explosives are carried in full car loads the doors must be stripped.

" *Ninth.* Any car containing any of the above explosive substances  *  *  *  must be plainly carded on both sides, ' Powder — handle carefully,' or, ' Explosives — dangerous — handle with care,' so that those having charge of it will not do anything ignorantly to incur danger.  *  *  *

" *Tenth.* Agents must notify conductors whenever a car containing explosives is to be taken from their station; and the conductors must not take from any station or any siding any car known to contain an explosive substance unless rules eight and nine have been complied with, and such cars must be placed in their train as near the middle as possible."

The fact that the car on which the dynamite was loaded was not equipped with air brakes did not have the slightest connection with the explosion, except as it is related to the further fact that the car was not placed in the middle of the train. If the car had been equipped with air brakes and left in the train next to the caboose, it would not have prevented the explosion. The air brakes were not in use at the time of the collision. The situation immediately before the collision required increased speed by train No. 61 instead of the use

of air brakes. The fact that the air brakes had no direct connection with the explosion makes this case wholly different from that of *Ellis* v. *N. Y., L. E. & W. R. R. Co. (supra)*, and other similar cases where some specific negligent act by the defendant was directly connected with the injury. The employees of the defendant knew that the car was loaded with high explosives and that it was not equipped with air brakes. One of the rules that we have quoted makes it the duty of the conductor of the train to put a car included therein which is loaded with high explosives as near the middle of the train as possible. There is no evidence to show that the twenty-five cars taken on at Binghamton could not have been safely placed behind the car loaded with dynamite leaving the car in the exact middle of the train. The conductor of train No. 61 with his crew made up the train at Binghamton and put the car loaded with dynamite at the end of the train in direct disregard of the rule. It is claimed by the respondent that the car was not placed in the middle of the train because of the fact that it was not equipped with air brakes. This is a matter of conjecture and there is nothing in the evidence from which it can be determined whether the car would have been placed differently in the train had it been differently equipped. When the train left Scranton if the crew making up the train had obeyed the rules of the defendant the car loaded with dynamite would have been either in the center of the train, or if we assume that it was not possible to so place it because it was necessary for the purpose of handling the train to have all the cars equipped with air brakes connected with the engine, it would then have been the tenth car from the rear, as the place provided by the rule being the place as near the center of the train as possible. When the train arrived in Binghamton and the cars to be left at that place were cut out of the train if the conductor had concluded not to put the car loaded with dynamite in the center of the train he should have put it as near the center of the train as possible considering the fact that it did not have air brakes. The only testimony relating to the equipment of the twenty-five

cars standing on the tracks at Binghamton to be taken into the train is that they were mostly equipped with air brakes. If the car loaded with dynamite had been placed immediately behind the cars equipped with air brakes it would have been somewhere in the train between the ninth car from the rear and the center of the train.

It is clear, therefore, from the testimony that the defendant's rule was not obeyed by the intestate's co-employees. Whether the dynamite in that car would have exploded had the car been placed in the center of the train, or from nine to twenty-six cars from the end, and also whether if the dynamite had exploded when at a point so far distant from the place of the collision the intestate would have been injured thereby are matters of pure speculation. The record does not show any negligence by the defendant contributing to the injury.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in both courts.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BART-LETT and HISCOCK, JJ., concur.

Order reversed, etc.