ZADIE E. DURKEE, as Administratrix of the Estate of OSCAR DURKEE, Deceased, Respondent, *v.* HUDSON VALLEY RAILWAY COMPANY, Appellant.

STREET RAILROADS — PLATFORMS OF CARS NOT REQUIRED TO BE OF SAME HEIGHT. A street surface railroad operating its cars singly does not owe a duty to its employees to use only cars so constructed that the platforms shall be of the same height above the track on which such cars are operated. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 546, distinguished.)

*Durkee* v. *Hudson Valley Ry. Co.,* 122 App. Div. 278, reversed.

(Argued December 2, 1908; decided December 15, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered

November 18, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* and *W. L. Kiley* for appellant. Negligence could not properly be imputed to the defendant because it owned and operated cars of different types, sizes and makes, nor because the bumpers on said cars were not all of the same width and exactly the same height. (*Stackpole* v. *Gray*, 99 App. Div. 262 ; *Salters* v. *D. & H. C. Co.*, 3 Hun, 338 ; *Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 43 Hun, 26 ; *W. & G. R. R. Co.* v. *McDade*, 135 U. S. 554 ; *Probst* v. *Delamater*, 100 N. Y. 266 ; *Laidlaw* v. *Sage*, 158 N. Y. 73 ; *Searles* v. *M. R. Co.*, 101 N. Y. 661 ; *Rupert* v. *B. H. Ry. Co.*, 154 N. Y. 90 ; *Frounfelker* v. *D., L. & W. R. R. Co.*, 74 App. Div. 224 ; *Filbert* v. *N. Y., N. H. & H. R. R. Co.*, 95 App. Div. 199.)

*J. A. Kellogg* for respondent. There is sufficient evidence to sustain the finding of the jury that the defendant was negligent. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546 ; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462 ; *Strauss* v. *N. Y., N. H. & H. R. R. Co.*, 91 App. Div. 583 ; *Pullutro* v. *D., L. & W. R. R. Co.*, 27 N. Y. S. R. 63.)

Willard Bartlett, J. This is a suit under the Employers' Liability Act (Laws of 1902, chap. 600) in which the plaintiff has recovered damages against the defendant corporation for having negligently caused the death of her intestate, a motorman in its employ, who was killed in a collision between two of the defendant's electric trolley cars on the line between the villages of Sandy Hill and Fort Edward on the night of July 2, 1905. Oscar Durkee, the plaintiff's intestate, was operating a south-bound car. The main line is a single track.

There is a switch at Baker's Falls, at which point when he arrived there he should have met and passed a car from Troy bound north. Durkee waited at this switch ten minutes for the Troy car, as was his duty, and then proceeded, having under the rules of the company the right of way to the next switch, known as the Fair Ground switch, distant 1,800 or 2,000 feet, or about two minutes in running time. Here the Troy car ought to have awaited his arrival, *on the siding;* but instead of so doing, it ran out upon the main track north of the siding, so that when Durkee's car came along it collided with the Troy car and caused the injuries to Durkee which resulted in his death. The front platform of the Troy car was higher than the front platform of Durkee's car. When the collision occurred the higher platform passed over the lower platform on which Durkee was standing, and the main structures of the two cars thus came together crushing Durkee between them.

Assuming that the plaintiff's intestate himself was in no wise at fault, it is manifest that his death was wholly attributable to the negligence of his fellow-servants who were operating the Troy car, unless it was also due to negligence on the part of the defendant corporation in failing to provide cars so constructed that in the event of a collision, such as occurred on this occasion, the platform of one of the colliding cars could not pass over the platform of the other.

The learned judge before whom the case was tried recognized this as the sole test of liability. Throughout the trial witnesses, counsel and the court used the term "bumpers" to characterize the extension of the floor of the car at either end which constitutes the platform; but there is no doubt what they were talking about. Such constructions are not bumpers in the sense in which that term is applied to freight and passenger cars operated in trains on steam railroad lines. The so-called bumpers in this case, as one of the principal witnesses for the plaintiff testified, "constitute the floor and the end of the floor under the vestibule and in the car."

Referring to the bumpers, as thus defined, the trial judge

instructed the jury as follows: " It is not claimed that the bumpers were defective or that the cars were defective in the sense that they were inadequate or in the sense that anything was broken about them. The charge is that in the construction of the bumpers one was built higher than the other, and that the company ought not to have allowed cars with bumpers so constructed to be used." He then referred to an alleged defect in the brakes, as to which he said the evidence was insufficient to warrant a finding of negligence, and continued : " So I instruct you that you must give your attention, so far as the negligence of this defendant is concerned, solely to the question of whether or not, in the construction of these two cars, one being built so that the bumper passed the other, there was negligence on the part of this defendant in allowing these cars to be used."

It is plain that a judgment based upon a verdict rendered under such instructions cannot be sustained unless we are prepared to hold that a street surface railroad company, operating its cars not in trains but singly and as separate vehicles, owes the duty to its employees of using only cars which have the platforms at either end so constructed as to be at one and the same height above the track upon which such cars are operated.

I can find no warrant for the assumption that the law imposes any such duty upon such corporations. It is supposed to have been declared by the decision of this court in *Ellis* v. *N. Y., L. E. & W. R. R. Co.* (95 N. Y. 546), but the supposition is founded upon a misapprehension of what was decided in that case. The " bumpers " there under consideration were bumpers in the true and accurate sense of the word. They constituted " a buffing apparatus " and were applied to cars designed to be operated together in trains, for the purpose of protecting persons called upon to go between the cars to couple or uncouple them, or for other purposes, and also to protect the cars themselves from injury in case they should be at any time violently forced together. It is true that with reference to cars thus intended to be entrained

this court did hold that an obligation existed on the part of a steam railroad company to provide them with "buffers of some kind" which should not overlap one another, but that proposition has no application to such a condition of things as is presented in the case at bar.   Here we have cars which are not intended to be operated in physical conjunction with other cars.   Each car in the ordinary management of the business of a street surface railroad is moved singly and wholly detached from any other car.   The obligation asserted in the *Ellis* case to adopt a method of buffer construction as a safeguard in cars designed to be run attached to one another in trains does not extend to cars the use of which is so radically different.   To hold otherwise and in accordance with the view adopted by the trial court in this case would be to require every electric trolley line company in the state to use only cars of an absolutely uniform pattern so far as the height of the floor is concerned, for the front and rear platforms, the extremities of which constitute the so-called "bumpers," are and must be merely extensions of the floor. Thus, a corporation would practically be prohibited from running large cars between separate cities and villages and smaller local cars within the limits of the respective municipalities. The service which motormen and conductors are called upon to perform in the management of electric street surface railway cars operated singly involves no such elements of danger as appertain to the duties of brakemen on steam railroad trains; and, hence, there is no occasion to impose upon the employer the duty to maintain the same safeguards against injury.   The employer's obligation in this respect is to be measured by the danger reasonably to be apprehended as indicated by a particular experience.   It is not going too far to say that there is nothing in the ordinary operation of single street surface railroad cars to suggest the necessity of supplying them with buffers of equal elevation above the surface of the tracks or, indeed, with any buffers at all to guard motormen against injury in consequence of probable collisions.

I am of opinion that the evidence in this case wholly failed to disclose any negligence on the part of the defendant.

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and CHASE, JJ., concur.

Judgment reversed, etc.