## CAMPBELL v. SPOKANE & I. E. R. CO.

(Circuit Court, E. D. Washington. April 17, 1911.)

No. 1,471.

1. Master and Servant (§ 111*)—Injury to Servant—Electric Railway Cars.

Independent of statute, an electric railway company is not bound to supply drawbars, heavy base framework, or buffers on the front end of its motors on the same line to protect motormen from injury by collisions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

2. Master and Servant (§ 94*)—Statutes—Violation—Negligence Per Se.

Where a statute is designed to protect a particular class of servants against a particular class of injuries, a violation of the statute is negligence per se only when one of the protected class is injured from a cause against which the statute was designed to protect him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 159; Dec. Dig. § 94.*]

3. Master and Servant (§ 111*)—Injuries to Servant—Electric Railway Motorman—Safety Appliance Act.

Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and acts amendatory thereof requiring all cars used in interstate commerce to be equipped with certain safety appliances, so that they could be coupled automatically by impact without the necessity of men going between them, was not intended to protect and did not protect employés from injuries received as the result of collision.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

4. Master and Servant (§ 111*)—Injuries to Servant—Electric Cars.

An electric railway company is under no obligation to maintain drawbars, heavy base framework, or buffers on the front end of its motors or cars unless it intends to couple or uncouple cars to that end.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

5. Master and Servant (§ 210*)—Injuries to Servant—Motormen—Assumed Risk.

Where an electric railway motorman was injured in a collision, he assumed the risk of danger arising from the fact that the car he was operating was old and of an antiquated type, and that it was so full of pas-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sengers that no avenue of escape was open to him when collision became imminent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 554–556; Dec. Dig. § 210.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

6. **MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT—RAILROADS—COLLISION—WAY OF ESCAPE.**

An electric railway company is not bound to provide a special avenue of escape for motormen in the event of a collision.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

7. **MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—PLEADING.**

In an action for injuries to an electric railway motorman in a collision, plaintiff was required to state in his complaint the particular act or acts of negligence relied on.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. § 258.*]

At Law. Action by Edgar E. Campbell against the Spokane & Inland Electric Railroad Company. On exceptions to the complaint. Motion to strike and to make more definite and certain granted.

Belden & Losey, for plaintiff.
Graves, Kizer & Graves, for defendant.

RUDKIN, District Judge. The defendant company owns and operates a line of electric railway between the city of Spokane, in the state of Washington, and the city of Cœur d'Alene, in the state of Idaho, and at the time of receiving the injury complained of in this action the plaintiff was a motorman in its employ. While the plaintiff was thus employed, on the 31st day of July, 1909, his train collided with another train operated by the defendant company over the same line, and running in the opposite direction, causing the injuries for which a recovery is here sought. The third and seventh paragraphs of the complaint allege that the drawbars on the front end of the motor car operated by the plaintiff, and the heavy base framework to which the drawbars are attached, were six inches lower than the like appliances on the front end of the motor car with which the plaintiff's car collided, and that the accident would not have happened had the drawbars and heavy framework on the two colliding cars been of the same height.

[1] Independently of statute, an electric railway company is under no obligation to supply drawbars, heavy base framework, or buffers, on the front end of its motors to guard and protect the motormen against injuries resulting from collisions with other cars or trains on the same line or track. Durkee v. Hudson Valley Ry. Co., 193 N. Y. 555, 86 N. E. 537; Filbert v. New York, N. H. Business Hr. Co., 95 App. Div. 199, 88 N. Y. Supp. 438.

[2] Nor does the complaint charge any violation of the safety appliance act of March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and the acts amendatory thereof, of which the plaintiff can complain. When a statute is designed to protect a particular class

---

of persons against a particular class of injuries, a violation of the statutory duty constitutes negligence per se, whenever one of the protected class is injured from a cause against which the statute was designed to protect him.　[3] The purpose of the safety appliance act was to require all cars, regularly used on any railroad engaged in interstate commerce, and all other cars used in connection therewith, to couple automatically by impact and to be coupled and uncoupled *without the necessity of men going between them,* whether they are loaded or empty, and although not actually engaged in such commerce at the time.　Hohenleitner v. Southern Pac. Co. (C. C.) 177 Fed. 796. The design of the act was, therefore, to protect employés from injuries received in going between cars to couple or uncouple them, not from injuries received in collisions.

Waiving the question whether the defendant violated the act by maintaining drawbars on its different cars at different heights, as between itself and the government, the plaintiff in this case has no ground of complaint, because he was not injured from the use of the defective drawbars, but as the result of a collision.

[4] A railway company is under no obligation to maintain drawbars, framework, or buffers on the front end of its engines or electric cars, unless it intends to couple or uncouple cars to that end; and if it is not required to supply such appliances at all, it is not responsible for the kind supplied, unless an employé is injured through their use.　The third and seventh paragraphs of the complaint will therefore be stricken.

The ninth paragraph of the complaint alleges, in substance, that the motor car upon which the plaintiff was employed was of an old and antiquated type; that there was but one way of ingress and egress to and from the motorman's department, and that the car was so crowded with passengers that no avenue of escape was open to the plaintiff when the collision became imminent.

[5] The make of the car and its crowded condition were fully known to the plaintiff, and he assumed all risk arising from these causes.

[6] Furthermore, I am not aware that it is the duty of an electric railway company to provide any special avenue of escape for the motorman in the event of a collision, or that it violates any of its legal duties if it fails so to do.　This paragraph will also be stricken.　·

[7] The defendant has further moved the court to require the plaintiff to make his complaint more definite and certain in certain particulars.　The complaint alleges that the defendant disregarded its rules, gave improper orders, and so forth, but these charges are entirely too general in their nature.　If the plaintiff has a cause of action he should be afforded every opportunity to prove it, but the defendant should likewise be afforded every opportunity to defend against it.　This collision was doubtless caused by negligence on the part of some officer or employé of the defendant company, but the particular act of negligence nowhere appears in the complaint.　The collision must have resulted from one of three causes.　First, the giving of improper orders to the crew of one or both of the colliding trains; or, second, the

failure to give proper orders to the crew of one or both of the colliding trains; or, third, disobedience of orders by one or both of such crews. If the collision resulted from one or more of these acts of negligence the plaintiff should set them forth in ordinary and concise language so that the defendant and the court may know the particular act of negligence relied on.

The foregoing, I apprehend, will be a sufficient guidance to the plaintiff in drafting an amended complaint, which he is permitted to file under the rules.

The motion to strike and the motion to make more definite and certain are granted.